No. 10　　　　　　　March 3, 2016　　　　　　　679

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of M. L. and R. L.,
Children.

DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*

*v.*

T. L.,
*Petitioner on Review.*

(CC 110440J02; CC 110441J02;
CA A155300 (Control); CA A155301;
SC S063204)

On review from the Court of Appeals.*

Argued and submitted November 12, 2015.

Holly Telerant, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Acting Solicitor General.

Angela Sherbo and Caitlin Mitchell, Portland, filed the brief for *amicus curiae* Youth, Rights & Justice.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices.**

BREWER, J.

The decision of the Court of Appeals is reversed. The case is remanded to the circuit court for further proceedings.

_____

\* Appeal from Clackamas County Circuit Court, Douglas V. Van Dyk, Judge. 269 Or App 454, 344 P3d 1123 (2015).

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case. Nakamoto, J., did not participate in the consideration or decision of this case.

**BREWER, J.**

In these consolidated juvenile dependency cases, father appeals from judgments changing the permanent plans for one of his children from reunification with a parent to guardianship and for another child from reunification to another planned permanent living arrangement (APPLA).[1] *See* ORS 419B.476(7) (providing that final decision in permanency hearing is appealable).[2] Father contends that his trial counsel was inadequate for failing to appear on his behalf at the hearing in which the juvenile court decided to change the permanent plans. He relies on *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 185-87, 796 P2d 1193 (1990), in which this court held that a parent could raise a claim of inadequate assistance of counsel for the first time on direct appeal from a judgment terminating parental rights. In so holding, the court concluded that the legislature intended for parents defending such actions to receive adequate assistance of counsel, although there did not exist an express statutory procedure for ensuring that right. *Id*.

The primary question in this case is whether a parent can raise a claim of inadequate assistance of counsel for the first time on direct appeal from judgments changing the permanent plans for his children from reunification with a parent to permanent plans of guardianship and APPLA. We answer that question in the affirmative, because we conclude that (1) the unchallenged rationale of *Geist* is applicable to a direct appeal from judgments that make such changes in the permanent plans for children who are wards of the court in dependency cases; and (2) the legislature's enactment, following this court's decision in *Geist*, of a statute that provides a juvenile court procedure for modifying or setting aside a dependency judgment while an appeal from the judgment is pending, did not obviate the need for a direct appeal remedy

---

[1] In January 2016, father relinquished his parental rights to his youngest child, T, thereby rendering his appeal from the change of plan in that case moot. Accordingly, our decision here pertains to only the cases involving the two older children, R and M.

[2] The 2011 version of that statute was in effect when the hearing at issue here occurred. We cite and quote the current version of the statute, ORS 419B.476 (2015), throughout this opinion because the changes effected by the 2015 amendment do not affect our analysis. *See* Or Laws 2015, ch 254, § 5.

for father's claim of inadequate assistance of counsel. For the reasons explained below, we reverse the decision of the Court of Appeals and remand the case to the juvenile court for further proceedings.

We take the pertinent facts and procedural history from the opinion of the Court of Appeals and the record. Father and mother have three children. The children were first placed in foster care in April 2011 due to concerns about both parents' heroin use. The children were returned home five months later over the objection of DHS.

The children were returned to foster care in early 2013, after both parents relapsed. In March 2013, the juvenile court took jurisdiction over the children based, with respect to father, on his stipulation that his use of alcohol and controlled substances interfered with his ability to provide safe, appropriate, and consistent care for the children. Among other provisions, the disposition judgment required father to participate in a drug and alcohol evaluation and to submit to random urinalysis testing. The judgment also ordered father and mother to appear for a review hearing on June 5, 2013. Neither parent appeared at that hearing, although their attorneys were present.

The court then scheduled a permanency hearing for August 29, 2013, to consider DHS's request that the permanent case plans for the children be changed from reunification with their parents to other plans. The court also scheduled a "contested" permanency hearing for October 25. Father and mother failed to appear at the start of the August 29 hearing, and father's attorney also failed to appear. Attorneys for DHS, the children, and mother were present. The court tried, unsuccessfully, to contact father's attorney and waited 12 minutes before beginning the hearing, noting that it was "very unusual" for father's attorney not to be present.

The court then proceeded with the hearing. After taking evidence and hearing argument (including from the children's appointed counsel, who advocated in favor of changing the plans), the court decided to change the permanent plan for the oldest child, R, to APPLA and to change the plans for the younger children, M and T, to

guardianship. At that point, father and mother arrived, and the court informed them of its decision to change the permanent plans. Father told the court—in an unsworn statement—that he was under the impression that he was doing what DHS had requested of him. Father stated that he "went through Tigard Detox," was "enrolled in Clackamas County Behavioral Health Program," and had had clean urinalyses. He also stated that he had dropped off a release to DHS the day before the hearing. Father did not say anything about the absence of his attorney at the hearing; nor did he indicate to the court that he was opposed to the changes in the permanent plans.

On September 6, 2013, the court entered permanency judgments consistent with its decision at the hearing. Father did not move to set aside the judgments. *See* ORS 419B.923.[3] Father did, however, appeal from the judgments. On appeal, father contended, among other things, that, because his counsel had failed to appear at the August 29 permanency hearing, he had received inadequate assistance of counsel. Father acknowledged that that claim was unpreserved, but he argued, based on *Geist*, that he nevertheless was entitled to assert the claim on direct appeal.

In a divided opinion, the Court of Appeals affirmed, holding that "a close reading of *Geist*, in light of the enactment of ORS 419B.923," required father's claim that his appointed trial counsel had been inadequate to "be made in the first instance in the juvenile court." *Dept. of Human Services v. T. L.*, 269 Or App 454, 458-59, 344 P3d 1123, *rev allowed*, 357 Or 324 (2015). The Court of Appeals reasoned that:

> "ORS 419B.923 now provides the statutory procedure for a parent to challenge the adequacy of counsel that was missing in *Geist*. And it does so—appropriately—in the trial court, the forum that both we and the Supreme Court have recognized provides the more efficient means to resolve such claims, which are inherently fact dependent."

*Id.* at 461 (citations omitted). The court concluded that, "to preserve a claim of inadequate assistance of appointed trial

---

[3] That statute, which plays a central role in our analysis, is set out below at 358 Or at 694-95 n 13.

counsel, a parent in a dependency proceeding must first seek to resolve that issue in the juvenile court by moving, under ORS 419B.923(1), for the court to modify or set aside the judgment or order to which the claim relates." *Id.* at 468.

On review, father asserts that the rationale of *Geist*—although rendered in the context of a judgment terminating parental rights—applies with equal force to the judgments that changed the children's permanent plans in these cases from reunification with a parent to guardianship and APPLA. DHS agrees with that proposition (as did the Court of Appeals),[4] but it argues that the enactment of ORS 419B.923, which gives a juvenile court authority to set aside its judgments pending direct appeal, has obviated the need for a direct appeal remedy for unpreserved claims of inadequate assistance of counsel in termination of parental rights proceedings and permanency proceedings alike. For that reason, in DHS's view, the Court of Appeals properly declined to review father's unpreserved claim of error. Alternatively, DHS argues that father was required to prove that his counsel failed to exercise adequate professional skill and judgment and that father was prejudiced by being denied a fundamentally fair trial. In this case, DHS asserts, father did not meet his burden of proving prejudice merely by showing that his attorney was absent.

Father replies that, contrary to the conclusion of the Court of Appeals, the text, context, and legislative history of ORS 419B.923 demonstrate that the legislature meant only to broaden a juvenile court's authority to set aside its own judgments, not to create an exclusive procedure for raising inadequate assistance of counsel claims in juvenile dependency proceedings. Thus, father asserts, the enactment of that statute did not undercut *Geist's* rationale for providing a

---

[4] The Court of Appeals in this case applied *Geist* to father's appeal from a permanency judgment without discussion, because it had previously held that *Geist* applies to pre-termination dependency proceedings. *T. L.*, 269 Or App at 460 (citing *State ex rel Juv. Dept. v. Charles/Austin*, 106 Or App 628, 810 P2d 389, *rev den*, 312 Or 150 (1991)). In *Charles/Austin*, the Court of Appeals explained that a dependency hearing can result in "a long-term deprivation of custody and a substantial intervention in the parent-child relationship[,]" and the potential intrusion "is so drastic" that parents in dependency cases "have a similar need for representation as do parents facing termination of their rights to their children." 106 Or App at 633-34 (citation omitted).

direct appeal remedy for unpreserved inadequate assistance of counsel claims. On the merits of his claim, father contends that his counsel's unexplained failure to appear at the August 29 hearing constituted inadequate assistance that prejudiced his efforts to reunify with his children. Father also argues that his counsel's failure to appear deprived him of a fundamentally fair hearing and violated his right to due process.

To frame our analysis, we begin with a discussion of *Geist*, which lies at the heart of the parties' dispute. There, the mother had appealed from a judgment terminating her parental rights to her child. The mother argued for the first time before the Court of Appeals that she was entitled to a reversal of the judgment because (among other things) her trial counsel had failed to provide her with adequate legal assistance. *State ex rel Juv. Dept. v. Geist*, 97 Or App 10, 15-16, 775 P2d 843 (1989), *aff'd*, 310 Or 176, 796 P2d 1193 (1990). The Court of Appeals stated that the mother's right to counsel in the termination of parental rights proceeding arose under *former* ORS 419.525(2), which provided that, "[i]f the parents are determined to be indigent by the court, and request the assistance of appointed counsel, the court shall appoint an attorney to represent them at state expense."[5] *Id.* at 16 n 4, 17. The Court of Appeals held that implicit in that statutory right to counsel was a right to competent and effective counsel. *Id.* at 17. However, the court refused to review the mother's claim, reasoning that, in contrast to criminal matters, the legislature had not created a "special forum" to litigate such claims, and the appellate courts had no authority to fashion one. *Id.* at 18.

On review, this court agreed with the Court of Appeals that "the legislature intended for the statutory right to counsel to include the right to adequate counsel. *Geist*, 310 Or at 185. But from there, it parted ways. This court held that the right to adequate counsel would "prove

---

[5] *Former* ORS 419.525(2) (1989), *repealed by* Or Laws 1993, ch 33, § 373, which was in effect at the time of the court's decision in *Geist*, is now codified in nearly identical form as ORS 419B.518(1). The current statute provides:

"If the parents are determined to be financially eligible, and request the assistance of appointed counsel, the court shall appoint an attorney to represent them at state expense."

illusory" without a procedure to vindicate that right. *Id*. Moreover, the court explained, its failure to provide a direct appeal remedy for inadequate assistance of counsel claims would undermine the goal of timely finality in termination of parental rights cases:

> "Experience teaches us that by the time a petition to terminate parental rights has been filed, the child(ren) involved probably will have been known to the juvenile authorities for a long period of time, often several years. In this case, for example, more than two years passed between the filing of the original dependency petition and the entry of the termination order. Generally, termination case records will show that services have been provided (or at least have been offered) to the parent(s) by several social service agencies, as was the case herein. Ultimately, and often as a last resort, the state will petition for termination of parental rights in order to free the child for adoption, so that the child will have an opportunity to be permanently integrated into a new family.

> "Any delay in achieving finality in a termination case adversely affects the rights of all the parties. Delay certainly will weaken the bonds between parents and children by lengthening their separation. Whether or not the eventual result is termination, protracted litigation extends uncertainty in the child(ren)'s life. Where a termination has been affirmed on direct appeal, procedures allowing further litigation or collateral attacks would delay the finality of the termination order and, thus, also delay the possibility of permanent adoption with the probable effect of reducing the chances for successful integration into an adoptive family. Thus, a procedure that allows a terminated parent to make a claim of inadequate counsel only after all direct statutory appeals have been exhausted would only further delay the finality of the termination decisions."

*Id*. at 186-87. In the absence of an "express legislative procedure," and "absent statutes providing otherwise," this court devised its own remedy. *Id*. at 185-87. Because it was "neither realistic nor reasonable to expect that a parent's trial counsel will have objected at trial that counsel's advocacy was inadequate," this court held that a parent could not reasonably be expected to preserve such a claim and concluded that unpreserved challenges to the adequacy of counsel in

termination proceedings were therefore cognizable on direct appeal. *Id.* at 184 n 9.[6]

In *Geist*, this court declined to decide the question of how to proceed in the event that the evidentiary record on direct appeal was insufficient to adjudicate a parent's claim. The court noted that "any determination that relevant evidence or argument was omitted or whether such omission would have made any difference in the outcome is best made by the trial court." *Id.* at 192 n 16. However, the court concluded that developing a procedure for resolving evidentiary questions "is the prerogative of the Court of Appeals or of the legislature in the first instance." *Id.*

The initial question for decision in this case is whether the rationale of *Geist* extends beyond appeals from judgments terminating parental rights, to appeals from judgments changing a permanent plan from reunification with a parent to a plan of guardianship or APPLA. Although, as discussed, DHS concedes that it does, and the Court of Appeals agreed with that proposition, we independently address it. As threshold considerations, several differences between termination proceedings and permanency proceedings deserve mention.

First, indigent parents are entitled as a matter of statutory right to appointed counsel in proceedings to terminate their parental rights. ORS 419B.518(1). In all other dependency proceedings, however, the statutory right to counsel depends on the application of specific criteria:

"(1) Counsel shall be appointed for the parent or legal guardian whenever the nature of the proceedings and due process so require, and when the parent or legal guardian has been determined by the court to be eligible to receive appointed counsel under the standard in ORS 135.050

---

[6] This court in *Geist* somewhat loosely blended statutory and constitutional principles. Without an extended statutory construction analysis, the court simply agreed with the Court of Appeals' conclusion that the statutory right to counsel in termination proceedings included, by implication, a right to adequate counsel. *Geist*, 310 Or at 185. The court expressly did not reach the question whether due process requires adequate counsel in termination cases. *Id.* at 187 n 12. However, when the court provided a judicial remedy for the vindication of the implied statutory right, it used due process principles to evaluate the adequacy of that remedy. *Id.* at 189-90.

[criminal procedural code section determining eligibility for indigent defendants] or the policies, procedures, standards and guidelines adopted under ORS 151.216 [Office of Public Defense Services (OPDS) policies for appointed counsel]. In deciding whether to appoint counsel under this section, the court shall consider the following factors:

"(a)  The duration and degree of invasiveness of the interference with the parent-child relationship that possibly could result from the proceeding;

"(b)  The complexity of the issues and evidence;

"(c)  The nature of allegations and evidence contested by the parent or legal guardian; and

"(d)  The effect the facts found or the disposition in the proceeding may have on later proceedings or events, including but not limited to termination of parental rights or criminal proceedings."

ORS 419B.205(1). Thus, unlike in termination proceedings, a juvenile court retains authority to deny a parent's request for counsel in other dependency proceedings—including permanency proceedings—if the nature of the proceeding and due process do not require representation. At least arguably, that difference suggests that the importance of legal representation for parents may be somewhat reduced in pretermination dependency proceedings.

Second, and relatedly, termination judgments impose the final loss of the parent-child relationship, whereas permanency judgments—including some judgments that do not contemplate a return of children to their parents' custody—do not necessarily lead to such drastic consequences. Again, that difference arguably limits the need for consideration of unpreserved claims of inadequate assistance that this court found necessary in *Geist*.

Third, the procedural history in an appeal from a permanency judgment does not include a record of later proceedings that could inform the determination whether inadequate assistance of counsel in fact prejudiced the complaining party. That difference can make it more difficult to determine the existence and extent of any prejudice resulting from inadequate assistance of counsel in a permanency

proceeding than in a termination proceeding, which is the final stage of proceedings.

Although those differences are noteworthy, we conclude that they are insufficient to preclude the application of *Geist's* reasoning to permanency proceedings in which counsel has been appointed and the court orders a change of the permanent plan from return to a parent to a plan of guardianship or APPLA. To explain why, we describe in some detail the role and nature of permanency proceedings in dependency cases.

Permanency proceedings are governed by ORS 419B.470 to ORS 419B.476. Those provisions were enacted in response to Congress's passage of the Adoption and Safe Families Act of 1997 (ASFA), which establishes a number of requirements for state foster care and juvenile court systems, with the ultimate goal of reducing the length of time that children spend in foster care. *See* 42 USC §§ 671, 675; Or Laws 1999, ch 859. Among other requirements, ASFA ties federal financial support for state juvenile systems to the existence of a case plan meeting certain requirements. *See* 42 USC §§ 671(a), 675(1) (describing the contents of a case plan). In keeping with ASFA, in a permanency proceeding in Oregon, the juvenile court must make certain determinations with regard to the case plan, and the court must determine and update, as appropriate, a permanent plan for children in care in accordance with specific time requirements and other conditions. *See* ORS 419B.476(2), (4), (5).

Among other plan options, the court may, under specified circumstances, change a case plan from reunification with parent to guardianship or APPLA.[7]

---

[7] ORS 419B.476(5) provides, in part:

"(5) The court shall enter an order within 20 days after the permanency hearing. In addition to any determinations or orders the court may make under subsection (4) of this section, the order shall include the following:

"* * * * *

"(e) If the court determines that the permanency plan for the ward should be establishment of a legal guardianship, the court's determination of why neither placement with parents nor adoption is appropriate.

"* * * * *

"(g) If the court determines that the permanency plan for a ward 16 years of age or older should be another planned permanent living arrangement, the court's determinations:

The permanency judgment with respect to M in this case changed her case plan from reunification to guardianship. Although the judgment did not specify a particular form of guardianship, ORS chapter 419B provides at least two types that may be appropriate for a ward. First, the juvenile court may establish a permanent guardianship if it finds by clear and convincing evidence that a ground for terminating parental rights exists, and that it is in the ward's best interest that the ward's parents should "never have physical custody of the ward[,] but that other parental rights and duties should not be terminated." ORS 419B.365(3). Second, the court may establish what is referred to as a "durable guardianship," if the court finds by a preponderance of the evidence that the ward cannot safely be returned home "within a reasonable time,"[8] that "adoption is not an appropriate plan for the ward," that "[t]he proposed guardian is suitable," and that a "guardianship is in the ward's best interests." ORS 419B.366(2), (5).

The juvenile court changed the permanent plan for R from reunification to APPLA. APPLA is "a permanency plan for a stable secure living arrangement for a child who has reached the age of 16 or young adult that includes building relationships with significant people in the child's life that may continue after substitute care. OAR 413-070-0000(6). APPLA is "the least preferred permanency plan of the five permanency plans for a child or young adult and is appropriate only after the permanency plans of reunification, adoption, guardianship, and placement with a fit and

---

"(A) Why another planned permanent living arrangement is in the ward's best interests and a compelling reason, that must be documented by the department, why it would not be in the best interests of the ward to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative; and

"(B) That the department has taken steps to ensure that:

"(i) The ward's substitute care provider is following the reasonable and prudent parent standard; and

"(ii) The ward has regular, ongoing opportunities to engage in age-appropriate or developmentally appropriate activities, including consultation with the ward in an age-appropriate manner about the opportunities the ward has to participate in the activities."

[8] "Reasonable time" is a term of legal art that "means a period of time that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." *Former* ORS 419A.004(20) (2011), *renumbered as* ORS 419A.004(23) (2015).

willing relative have been determined not in the best interests of a child or young adult." *Id*.[9] Among other placement alternatives, APPLA can consist of permanent foster care. *See* OAR 413–070–0532(1) (defining types of APPLA).

Against that backdrop, we turn to ORS 419B.205. Because that statute directs courts to consider specific criteria in determining whether to appoint counsel for parents in dependency proceedings rather than termination proceedings, we initially consider whether, when counsel is appointed in permanency proceedings and the court orders a change in plan from reunification with a parent to a plan of guardianship or APPLA, counsel must also be adequate.

As noted, ORS 419B.205(1) sets out four factors for consideration in determining whether the nature of particular juvenile proceedings and due process require the appointment of counsel. As to the first factor, the "duration and degree of invasiveness" into the parent-child relationship is significant in a permanency proceeding, where the court orders a change in plan from reunification with a parent to a plan of either guardianship or APPLA. Among other things, such a change divests the parent of family reunification services as a matter of right from that time forward. *See* ORS 419B.476(4)(c) (providing that court may order reunification services if it determines "that further efforts will make it possible for the ward to safely return home within a reasonable time[.]"). Relatedly, DHS's statutory obligations under ORS 419B.476(2)(a) to make "reasonable efforts * * * to make it possible for the ward to safely return home and [determine] whether the parent has made sufficient progress to make it possible for the ward to safely return home[,]" no longer apply where the permanent plan has changed from reunification to a different permanent plan.[10] Consistent

---

[9] An earlier version of the APPLA rule was in effect when the hearing at issue here occurred. *See* OAR 413-070-0524(1) (Jan 15, 2013). We quote the current rule because the revision does not affect our analysis.

[10] ORS 419B.476(2)(a) provides, in part, that,

"*[i]f the case plan at the time of the hearing is to reunify the family*, [the court shall] determine whether the [d]epartment * * * has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home." (Emphasis added).

with that premise, the juvenile court's judgments in these cases stated that DHS had made reasonable efforts to reunify father with the children, but that father had failed to make reasonable progress toward meeting the expectations set out in the case plan; in its judgments, the court did not require DHS to provide further services to father. In short, a change in permanent plan from return to parent to either guardianship or APPLA marks a profound change of course in the path to finality for children in care.

As to the second factor, the legal and factual issues in a permanency proceeding resulting in a change of permanent plan from return to parent to either guardianship or APPLA can be complex. Among other challenges, DHS has the burden to prove that a parent has not made sufficient progress to have the children returned despite its reasonable efforts, and the evidence required to meet that burden often includes detailed medical, psychological, or substance abuse treatment records and accompanying expert testimony. ORS 419B.476(2)(a). Testing the probative value of such evidence generally requires knowledge of the evidence code, including juvenile code exceptions to general evidence code requirements, the use of defense experts and investigators, and familiarity with pertinent case law addressing, among other issues, the reasonable efforts and reasonable time requirements.[11] *See*, *e.g.*, *State ex rel SOSCF v. Stillman*, 333 Or 135, 146, 36 P3d 490 (2001) (holding that statutory requirements are meant to be "child-specific," calling for "testimony in psychological and developmental terms regarding the particular child's requirements").

The third factor requires consideration of the nature of the allegations and evidence, and the fourth

---

[11] The broad authority to test DHS's evidence is shown by ORS 419B.875(2), which provides a nonexclusive list of rights granted to parties in dependency and termination hearings. That statute provides, in relevant part:

"The rights of the parties include, but are not limited to:

"* * * * *

"(b) The right to appear with counsel and * * * to have counsel appointed as otherwise provided by law;

"(c) The right to call witnesses, cross-examine witnesses and participate in hearings[.]"

requires consideration of the effect that the facts or disposition in the proceeding may have on later proceedings. With respect to those factors, where the court changes a case plan from reunification to a permanent plan such as guardianship or APPLA, the parent's status as the preferred placement for the child is effectively terminated. *See* ORS 419B.476(5) (describing alternative plans to reunification with parent). Although that consequence is not so drastic as the termination of parental rights, the magnitude of deprivation—including the potentially permanent denial to a parent of custody and care of children—nevertheless is grave. *See, e.g.*, ORS 419B.365(5) (providing that, "[u]nless vacated under ORS 419B.368, a guardianship established under this section continues as long as the ward is subject to the court's jurisdiction as provided in ORS 419B.328").

In sum, our application of the factors set out in ORS 419B.205 leads to the conclusion that, when counsel has been appointed in a permanency proceeding, and a change of plan from return to parent to a permanent plan of guardianship or APPLA is ordered, counsel also must have been adequate. Of particular import, the complex nature of the legal and factual issues, and the gravity of the interests at stake in such proceedings, indicate that counsel appointed pursuant to ORS 419B.205 must be adequate, with adequacy determined using a standard of fundamental fairness. *See Geist*, 310 Or at 189-90.

Furthermore, we conclude that the concern that the court in *Geist* expressed about achieving finality for children in care as soon as possible applies to permanency judgments that order a change in permanent plan from return to parent to guardianship or APPLA. The risk of disrupting those types of permanent living arrangements by a subsequent determination that counsel was inadequate in the underlying permanency proceeding undermines the very certainty and finality of placement—within a child-specific reasonable time—that they are meant to promote. The "probable effect" is to "reduc[e] the chances for successful integration [of the children] into a [new] family." *Geist*, 310 Or at 187. To paraphrase the reasoning of *Geist*, appellate courts must

not permit children to remain in such a state of uncertainty "any longer than is absolutely necessary." *Id.* at 187.

Those considerations indicate that the unchallenged principles in *Geist* apply to proceedings in which a court orders a change in permanent plan from return to parent to a plan of guardianship or APPLA, and that the provision of a remedy for unpreserved claims of inadequate assistance of counsel in direct appeals from such judgments is justified. *See Geist*, 310 Or at 190 (the applicable due process standard in juvenile proceedings is "fundamental fairness," which includes fact-finding procedures, such as "notice, [] counsel, confrontation, cross-examination, and standards of proof").[12]

The question that remains is the one on which the Court of Appeals divided and the only one on which the parties disagree on review: Whether this court's reasons for providing a direct appeal remedy in *Geist* have been obviated by the enactment in 2001 of ORS 419B.923.[13] In overview, that statute provides that, "on motion and such notice and hear-

---

[12] Our conclusion is a narrow one, because it is unnecessary in these cases to decide whether the reasoning in *Geist* applies to direct appeals from other types of dependency orders and judgments. We note, however, that the considerations applicable here may carry less weight in appeals from appealable judgments entered earlier in the course of a dependency case due, in part, to the juvenile court's ongoing ability to recognize and remedy the effects of inadequate representation throughout the course of the proceedings. Nothing we have said in this opinion should be understood to encourage appeals that would result in needless delay in achieving certainty and finality for children in dependency cases.

[13] That statute provides, in part:

"(1) Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to:

"(a) Clerical mistakes in judgments, orders or other parts of the record and errors in the order or judgment arising from oversight or omission. These mistakes and errors may be corrected by the court at any time on its own motion or on the motion of a party and after notice as the court orders to all parties who have appeared. During the pendency of an appeal, an order or judgment may be corrected as provided in subsection (7) of this section.

"(b) Excusable neglect.

"(c) Newly discovered evidence that by due diligence could not have been discovered in time to present it at the hearing from which the order or judgment issued.

ing as the court may direct, the court may modify or set aside any order or judgment made by it." ORS 419B.923(1). Such a motion "must be made within a reasonable time," and "no order or judgment pursuant to ORS 419B.527 [permanently committing a child to DHS for the purpose of consenting to adoption] may be set aside or modified during the pendency of a proceeding for the adoption of the ward, nor after a petition for adoption has been granted." ORS 419B.923(3). The motion "may be filed with and decided by the [juvenile] court during the time an appeal from a judgment is pending before an appellate court." ORS 419B.923(7). In short, ORS 419B.923 allows a parent to move to set aside "any order or judgment" made by the juvenile court, and further, it allows a parent to do so during the pendency of a direct appeal from the order or judgment.

    The parties agree about the operation of ORS 419B.923 in two respects. First, they agree that that statute may be used to raise an inadequate assistance of counsel claim before the juvenile court. Second, they agree that the

_____

    "(2) A motion to modify or set aside an order or judgment or request a new hearing must be accompanied by an affidavit that states with reasonable particularity the facts and legal basis for the motion.

    "(3) A motion to modify or set aside an order or judgment must be made within a reasonable time except no order or judgment pursuant to ORS 419B.527 [permanently committing of the ward to the department] may be set aside or modified during the pendency of a proceeding for the adoption of the ward, nor after a petition for adoption has been granted.

    "(4) Except as provided in subsection (6) of this section, notice and a hearing *** must be provided in any case when the effect of modifying or setting aside the order or judgment will or may be to deprive a parent of the legal custody of the child ***. The provisions of this subsection do not apply to a parent whose rights have been terminated under ORS 419B.500 to 419B.524 or whose child has been permanently committed by order or judgment of the court unless an appeal from the order or judgment is pending.

    "* * * * *

    "(7) A motion under subsection (1) of this section may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court. The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order or judgment in the appellate court within seven days of the date of the trial court order or judgment. Any necessary modification of the appeal required by the court order or judgment must be pursuant to rule of the appellate court.

    "(8) This section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court."

text, context, and legislative history of the statute do not indicate that the legislature meant to provide an exclusive mechanism for resolving such claims or even that the legislature specifically considered its effect on inadequate assistance claims.

We agree with both propositions. As to the first, nothing in ORS 419B.923 prohibits a juvenile court from considering a challenge under its provisions to an order or judgment based on inadequate assistance of counsel. The listed grounds for modifying or setting aside an order or judgment are nonexclusive; there is no indication that, by providing specific examples, the legislature meant to preclude a juvenile court from setting aside or modifying its prior judgments based on other appropriate grounds. *See State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011) (terms such as "including but not limited to" typically convey an intent that the enumerated "examples be read in a nonexclusive sense").[14]

With respect to the second agreed proposition, we note that ORS 419B.923 is still devoid of any specific procedure for raising a claim of inadequate assistance of counsel, as had been found wanting in *Geist. See* 310 Or at 185. Although that statute confers broad authority on a juvenile court to correct its own "errors and omissions," it does not, by its terms, create an exhaustion requirement for inadequate assistance of counsel claims that arise in juvenile dependency proceedings, nor does it otherwise limit the authority of an appellate court to review such claims.

The context of ORS 419B.923—specifically another statute enacted by the same legislature—is consistent with that understanding. *See State v. Gaines*, 346 Or 160, 177

---

[14] It is true that, under the principle of *ejusdem generis*, courts examine "common characteristics" of enumerated items when construing more general words. *See Kurtz*, 350 Or at 74. However, there is no indication in the text, context, or legislative history of ORS 419B.923 that the legislature intended the listed examples of grounds for setting aside an order or judgment to have a limiting effect. In particular, the pertinent legislative history shows that the statute's drafters imported several grounds for setting aside a judgment set out in ORCP 71, but intended not to limit the grounds for relief to "a closed universe" of those that it enumerated. Tape Recording, Senate Committee on Judiciary, HB 2611, Apr 30, 2001, Tape 115, Side B (statement of Michael Livingston Oregon Department of Justice, Appellate Division).

n 16, 206 P3d 1042 (2009) (statute's context includes other statutes enacted simultaneously with statute at issue). The same legislative assembly that enacted ORS 419B.923 enacted another juvenile code provision—Or Laws 2001, ch 803, § 3, codified as ORS 419C.615—that established specific rules and standards for delinquent youths to seek post-adjudication relief that includes the setting aside of earlier judgments or orders. HB 2355 (2001). Before 2001, the set-aside statutes in the delinquency and dependency codes were identical. *Compare* ORS 419C.610 (1999), *amended by* Or Laws 2003, ch 396, § 135 ("[t]he court may modify or set aside any order made by it"), *with former* ORS 419B.420 (1999), *repealed by* Or Laws 2001, ch 622, § 57 ("[t]he court may modify or set aside any order made by it"). In contrast to the comparatively modest changes that it enacted in ORS 419B.923, the 2001 Legislative Assembly more extensively amended the corresponding delinquency code set-aside statutes to add a detailed procedure that would "harmonize[] post-conviction rights in juvenile cases involving delinquency with those that currently apply in criminal law." Tape Recording, House Committee on Judiciary, HB 2355, Feb 16, 2001, Tape 13, Side A (statement of Rep Lane Shetterly). *See* ORS 419C.615 (grounds for setting aside order, including procedure and right to appeal); ORS 138.510 to 138.686 (post-conviction relief statutes).

The 2001 Legislative Assembly added a provision to the delinquency code stating that, "[i]n addition to any other grounds upon which a person may petition a court under ORS 419C.610 [to set aside a judgment]," a person who is adjudicated as a delinquent in a juvenile court may seek relief based on "[a] substantial denial in the proceedings" of the person's constitutional rights or on the "[u]nconstitutionality of the statute" under which the person was adjudicated. ORS 419C.615(1). The legislature also established a procedure for bringing such a claim, including a specified burden of proof and a right to appeal. ORS 419C.615(2)-(3). In addition, ORS 419C.616 sets out detailed exhaustion-type provisions concerning the relationship between a proceeding to set aside a delinquency judgment and other proceedings, including a direct appeal from the judgment, and ORS

419C.617 establishes time limits for asserting claims to set aside delinquency judgments.[15] None of those provisions find a parallel in dependency proceedings in ORS 419B.923. The enactment of the particularized set of provisions for challenging the denial of rights in delinquency proceedings thus suggests that, in enacting the much more general ORS 419B.923, the legislature did not intend to prescribe a com-

---

[15] ORS 419C.616 provides, in part:

"(1) The effect of a prior proceeding concerning the adjudication of the person that is challenged in a petition under ORS 419C.615 is as follows:

"(a) The failure of the petitioner to have sought appellate review of the adjudication, or to have raised matters alleged in the petition at the prior proceeding, does not affect the availability of relief under ORS 419C.615. No proceeding under ORS 419C.615 may be pursued while direct appellate review of the adjudication remains available.

"(b) When the petitioner sought and obtained direct appellate review of the adjudication, no ground for relief may be asserted in a petition for relief under ORS 419C.615 unless the ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. If the petitioner was not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 419C.615 that was not specifically decided by the appellate court may be asserted in the petition described in ORS 419C.615.

"(2) The court may grant leave, at any time prior to entry of an order granting or denying relief, to withdraw the petition. The court may make appropriate orders as to the amendment of the petition or any other pleading, as to the filing of further pleadings, or as to extending the time of filing of any pleading other than the original petition.

"(3) All grounds for relief claimed in a petition described in ORS 419C.615 must be asserted in the original or amended petition, and any grounds not asserted are deemed waived, unless the court on hearing a subsequent petition finds grounds for relief asserted therein that could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition that was withdrawn prior to the entry of an order granting or denying relief by leave of the court, as provided in subsection (2) of this section, has no effect on the right of the petitioner to bring a subsequent petition."

ORS 419C.617 provides:

"If a person seeking relief under ORS 419C.615 is over 18 years of age and is no longer within the jurisdiction of the juvenile court, the petition must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted therein that could not reasonably have been raised in the original petition or an amended petition:

"(1) If no appeal is taken, the date the juvenile court adjudication was entered in the register.

"(2) If an appeal is taken, the date the appeal is final in the Oregon appellate courts."

prehensive mechanism for vindicating the right to adequate assistance of counsel in dependency cases.[16]

The legislative history of ORS 419B.923 is consistent with that conclusion. When this court decided *Geist* in 1990, the existing set-aside statute in the juvenile dependency code provided that a juvenile court "may modify or set aside any order made by it upon such notice and with such hearing as the court may direct." *Former* ORS 419.529(1) (1989), *repealed by* Or Laws 1993, ch 33, § 373.[17] In 1993, the legislature renumbered that statute as part of a comprehensive reorganization of the juvenile code but left its text unchanged. *See former* ORS 419B.420 (1993).

In 2001, the legislature convened a Juvenile Code Revision Work Group for the purpose of addressing perceived procedural inconsistencies in the juvenile code. *See* Testimony, Senate Committee on Judiciary, HB 2611, Apr 30, 2001, Ex H (statement of Kathie Osborn, Oregon Law Commission). Based on a recommendation of that work group, the legislature recodified *former* ORS 419B.420 as ORS 419B.923. Or Laws 2001, ch 622, §§ 33, 57. The new statute closely tracked the text of *former* ORS 419B.420, but, unlike its predecessor, ORS 419B.923 expressly provided (and still provides) that a trial court retains the authority to decide a motion to set aside a judgment while the judgment is being appealed. Despite that difference, and even though the 2001 work group convened years after *Geist* was decided and recommended revisions to the delinquency code that borrowed from criminal code provisions for post-conviction relief, its report to the legislature did not mention either *Geist* or inadequate assistance of counsel claims.

---

[16] We recognize that it could be argued that, because the 2001 Legislative Assembly enacted an express procedure for resolving inadequate assistance claims in delinquency cases, its contemporaneous enactment of ORS 419B.923 was meant to provide an analogous express procedure for resolving inadequate assistance claims in dependency proceedings. However, despite this court's invitation in *Geist*, the lack of any express reference to such claims in ORS 419B.923, and the failure to create any detailed procedure suited to the demands of such claims (including, for example, any provision for the appointment of substitute trial counsel to assert them), strongly suggests that the legislature did not intend to accept this court's invitation by enacting that statute.

[17] This court's opinion in *Geist* did not mention former ORS 419.529; rather, the court appeared to assume that no statutory procedure existed to vindicate the right to adequate counsel.

We draw the following conclusions from our examination of the text, context, and legislative history of ORS 419B.923. First, that statute authorizes a motion to set aside a permanency judgment based on a claim of inadequate assistance of counsel in the permanency proceeding. Second, in contrast to its predecessor statutes, ORS 419B.923 expressly provides a right to seek relief from a judgment while an appeal from the judgment is pending. Third, in enacting ORS 419B.923, the legislature did not specifically contemplate its effect on inadequate assistance claims, nor does the statute provide an exclusive mechanism for resolving them. Unlike in delinquency proceedings, the legislature has not provided any comprehensive mechanism for the adjudication of inadequate assistance of counsel claims in juvenile dependency proceedings.

Those omissions notwithstanding, DHS asserts that a parent should be required to preserve an inadequate assistance of counsel claim in the juvenile court under ORS 419B.923, because (1) the juvenile court is the appropriate forum for developing an evidentiary record, including making credibility determinations; (2) resolving factual disputes in the juvenile court while an appeal is pending is more expeditious than doing so on remand at the conclusion of an appeal; and (3) requiring an evidentiary hearing in the juvenile court provides procedural fairness to all parties. Father disagrees. In his view, "there is nothing in the logic of *Geist* or the text or context of the statute itself to suggest that ORS 419B.923 should bar a parent's ability to raise an inadequate assistance claim on direct appeal [] or an appellate court's authority to review that claim."

We agree with father that ORS 419B.923 has not altered the pertinent legal landscape in a fundamental way: A parent's practical inability to preserve a claim of inadequate assistance of counsel remains the same.[18] For

_____

[18] As this court noted in *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008), "[t]he principal exception to preservation requirements is for so-called 'plain error'—that is, an error apparent on the record, about which there is no reasonable dispute." However, "[i]n some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue." *Id.* at 220; *see, e.g.*, *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 182, 205 P3d 36 (2009) (juvenile court's error in failing to include all statutorily required findings was not subject to the constraints of plain error review

father, as for most laypersons, the first opportunity to raise the issue of inadequate representation did not arise until he was able to consult with appellate counsel. As this court observed in *Geist*:

> "We recognize the reality that it is unlikely that any challenge to the adequacy of appointed trial counsel will have been preserved in the circuit court. It is neither realistic nor reasonable to expect that a parent's trial counsel will have objected at trial that counsel's advocacy was inadequate. \*\*\* [W]e conclude that the general rule that appellate courts will only consider error that has been preserved at trial need not be strictly applied to the issue of appointed trial counsel's adequacy in a parental rights termination proceeding."

310 Or at 184 n 9.

As a practical matter, the identification of an inadequate assistance of counsel claim and the question whether it caused cognizable prejudice to a party are complex legal issues that remain likely to be detected and assessed in the first instance only by competent counsel. As a consequence, any efficiency-related advantage of a rule requiring the preservation of error before the juvenile court in connection with such claims likely will be practically unattainable in most circumstances.

To create a more adequate and exclusive trial-level mechanism for asserting inadequate assistance of counsel claims in dependency proceedings, the legislature could have established (as it did in the context of delinquency judgments under ORS 419C.616 and ORS 419C.617) the relationship between direct appeals from a dependency judgment and collateral proceedings to set aside the judgment and what, if any, exhaustion-type requirements and time limits apply to such collateral proceedings. Although ORS 419B.923(8) provides that a juvenile court has "inherent power" to set aside a dependency judgment "within a reasonable time,"

---

because the mother had no practical ability to raise the issue before the permanency judgment issued within 20 days of the hearing); *cf. State v. Vanornum*, 354 Or 614, 628-29, 317 P3d 889 (2013) (rule of civil procedure did not limit the Court of Appeals' authority to review the merits of defendant's unpreserved claims of instructional error according to principles regarding preservation and plain error).

a parent ordinarily lacks standing to appear as a party in a dependency proceeding after a judgment terminating his or her parental rights becomes final following appeal. ORS 419B.524. Accordingly, there is a particular urgency in the final stages of dependency proceedings to provide counsel for parents to promptly pursue and adjudicate inadequate assistance of counsel claims by means of clearly identified procedural channels. Those factors support the provision of a direct appeal remedy for unpreserved inadequate assistance of counsel claims in connection with permanency judgments that impose a change of plan from return to parent to either guardianship or APPLA.

That conclusion does not mean that ORS 419B.923 is of no consequence to our decision. That statute does provide a somewhat improved opportunity for the assertion of inadequate assistance of counsel claims in dependency cases in comparison to the set-aside statute in effect when *Geist* was decided. As noted, subsection (7) expressly authorizes the assertion of such claims while an appeal is pending. In addition, it requires communication between the juvenile and appellate courts as such claims are adjudicated. In particular, the moving party must "serve a copy of the motion on the appellate court," and the moving party must "file a copy of the trial court's order or judgment in the appellate court within seven days of the date of the trial court order or judgment." ORS 419B.923(7). Further, subsection (7) provides that "[a]ny necessary modification of the appeal required by the court order or judgment must be pursuant to rule of the appellate court."

Another consideration also bears emphasis. As in challenges to the adequacy of counsel under the Sixth Amendment to the United States Constitution, "the burden of proof to establish trial counsel's inadequacy" in a juvenile dependency proceeding rests with the party seeking relief. *Geist*, 310 Or at 191. To be entitled to relief, a parent must show not only that trial counsel was inadequate, but also that the inadequacy prejudiced the parent's rights to the extent that the merits of the juvenile court's decision are called into serious question. *Id*. As father acknowledges, it is a "rare" case in which the question whether counsel was inadequate will not require the development of an evidentiary record.

That is even more likely in an appeal from a pre-termination dependency judgment because, given the segmented and sequential unfolding of dependency cases, prejudice can be either ameliorated or exacerbated by what happens at the next stage of the case. Accordingly, there likely will be many instances where it will be necessary to develop a more thorough evidentiary record than exists on direct appeal to determine whether the parent is entitled to relief.

The foregoing cross-cutting considerations lead us to the following refinement of the principles set out in *Geist*. First, for the reasons previously stated, we conclude that the unchallenged rationale of *Geist* is not limited to termination of parental rights proceedings; that rationale also applies to permanency proceedings in which counsel has been appointed, where the court orders a change of plan from return to parent to a permanent plan of either guardianship or APPLA. Second, we conclude that ORS 419B.923 does not provide a trial-level remedy for inadequate assistance of counsel claims that undercuts the holding in *Geist* that it is unnecessary to preserve such a claim before the juvenile court; instead, the claim may be raised in the first instance on direct appeal. Third, if—in the first instance on direct appeal—a party identifies an inadequate assistance of counsel claim, and if the further development of an evidentiary record would be necessary to determine whether inadequate assistance was rendered or whether the party suffered cognizable prejudice as a consequence, then the party should seek appropriate relief from the judgment under ORS 419B.923.[19] Fourth, if a party asserting an inadequate assistance of counsel claim on direct appeal fails to utilize the procedure provided by ORS 419B.923, and the

---

[19] ORS 151.216 (1) provides that the Public Defense Services Commission (PDSC) shall "[a]dopt policies, procedures, standards and guidelines" for the "appointment of counsel," and the "[p]erformance for legal representation[.]" ORS 151.216(1)(f)(B), (G). Pursuant to that directive, PDSC has adopted complaint policies and procedures (the PDCPP) that are published on its website. *See* Public Defense Services Commission, *Public Defense Complaint Policy and Procedures*, *at* http://www.oregon.gov/OPDS/docs/CBS/PDSCCOMPLAINTPOLICYANDPROCECURES10-17-08.pdf (last visited Feb 26, 2016).

As discussed, the juvenile court is the appointing authority for indigent representation in dependency cases. ORS 419B.205(1). However, subsection (2) of the same statute provides:

Court of Appeals determines that the record is insufficient to warrant relief, then the Court of Appeals may, where appropriate, affirm without prejudice to the parent's ability to renew the claim before the juvenile court under ORS 419B.923 or remand for an evidentiary hearing under ORS 419B.923. *See*, *e.g.*, *Dept. of Human Services v. H. H.*, 266 Or App 196, 206, 337 P3d 929 (2014), *rev den*, 356 Or 837 (2015) (declining to remand for an evidentiary hearing where parents failed to raise "substantial" question about trial counsel's adequacy, but affirming without prejudice to parents' ability to renew claim in juvenile court under ORS 419B.923 so as to further develop evidentiary record).[20]

We turn to the application of the foregoing principles to the circumstances of this case. Although we ordinarily would remand to the Court of Appeals to apply them in the first instance, out of concern for the regrettable delay that already has occurred in this case, we make our own initial determination. We conclude that, in two ways, a more complete evidentiary record is necessary to review father's claim. First, although father's counsel's failure to appear at the August permanency hearing—which is unexplained on this record—is a serious concern, we do not know whether there is a reasonable explanation for counsel's absence. For example, if counsel had been in a car accident on the way to

---

"The court may not substitute one appointed counsel for another except pursuant to the policies, procedures, standards and guidelines adopted under ORS 151.216 [the PDCPP]."

ORS 419B.205(2). The PDCPP recognize the broad authority of the Office of Public Defense Services to receive information regarding the performance of public defense providers and to "tak[e] such actions as it deems appropriate." PDCPP at 4. That authority is broad enough to include communication with a juvenile court concerning the perceived necessity for the appointment of substitute counsel to pursue a motion to set aside an order or judgment under ORS 419B.923 based on the ground of inadequate assistance of counsel in the proceeding underlying the order or judgment.

[20] We recognize that the overlapping pendency of two separate proceedings involving the same issue—a direct appeal and a proceeding under ORS 419B.923—gives rise to the possibility that a juvenile court's judgment under ORS 419B.923 could render moot an inadequate assistance claim previously asserted on direct appeal. However, that possibility is inherent in the structure of ORS 419B.923(7). In any event, we are confident that existing appellate procedural rules are sufficiently flexible to accommodate the possibility of overlapping determinations without fueling unnecessary delay. *See*, *e.g.*, ORAP 2.30 (providing for consolidation of separate cases on appeal); ORAP 8.45 (requiring notice of occurrence of event rendering appeal moot).

court, or if the court clerk had failed to properly notice the hearing, a satisfactory explanation might exist. The point is that neither party has had an opportunity to make a record as to why counsel failed to appear.

In addition, we conclude that the record is insufficient for an appellate court to make an informed determination whether father was prejudiced by counsel's absence. The juvenile court told father at the August 29 hearing that it would be willing to revisit its decision to change the permanency plans if new information about father's progress was forthcoming. A second "contested" permanency hearing had been scheduled for October, and there is no evidence in the record before us as to what happened at that hearing, if it was held. Moreover, it is impossible to determine on the existing record whether counsel could have provided the court with any information that would have altered its permanency decision at the August 29 hearing.

Each of those matters is an appropriate consideration as to the issue of prejudice, and neither party has had an opportunity to create an evidentiary record with respect to them. Accordingly, we remand father's inadequate assistance of counsel claim to the juvenile court for the purpose of determining whether father is entitled to relief from the permanency judgments at issue here under ORS 419B.923.[21] Trial counsel shall be appointed to represent father in that proceeding, and father shall, in accordance with ORS 419B.923(7), file a copy of the juvenile court's judgment with the Court of Appeals within seven days of the date of the judgment, whereupon that court shall proceed to resolve father's appeal.[22]

The decision of the Court of Appeals is reversed. The case is remanded to the circuit court for further proceedings.

---

[21] Father's briefs before the Court of Appeals with respect to his inadequate assistance of counsel claim shall be deemed to satisfy the requirements of ORS 419B.923(2).

[22] We do not reach father's alternative argument that the juvenile court's conduct of the August 29 hearing without counsel's presence rendered the hearing fundamentally unfair so as to deny him due process of law.