No. 720          October 9, 2024          429

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of U. D. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. D. G.,
*Appellant.*

Lane County Circuit Court
23JU04855; A183601

Valeri L. Love, Judge.

Submitted August 7, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Elena C. Stross, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

In this juvenile dependency case, mother appeals the judgment of jurisdiction and disposition, challenging only the dispositional aspects of that judgment. Specifically, mother assigns error to the juvenile court's dispositional orders, asserting that her lawyer was inadequate when he failed to follow up on and develop the general objection that she personally asserted in response to the court's inquiry. For the reasons explained below, we affirm.

We review inadequate assistance of counsel claims, such as this one, to determine whether the juvenile dependency proceeding was "fundamentally fair." *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 187, 796 P2d 1193 (1990). It is mother's burden to establish that her lawyer was inadequate in failing to object to the court's dispositional orders and that she was prejudiced by that inadequacy. *Dept. of Human Services v. T. L.*, 358 Or 679, 702, 369 P3d 1159 (2016). Mother raises her inadequate assistance of counsel claim for the first time on appeal. But while "it is a 'rare' case in which the question *** will not require the development of an evidentiary record[,]" *id.*, we are satisfied that the record here was sufficiently developed during the jurisdictional trial to allow us to review her claim, which is restricted to two of the dispositional orders.

A detailed recitation of the facts would be of no benefit to the bench, the bar, or the public. To the extent that certain facts and procedural events help us explain our decision to the parties and their legal counsel, we provide those as necessary. The juvenile court conducted a three-day trial in which mother contested the allegations raised by the Department of Human Services (DHS) in its dependency petition, including the following: (1) "mother's erratic and impulsive behaviors interfere with her ability to safely parent [U]," (2) "mother's volatile behaviors present a threat of harm to [U]," (3) "mother's behavior indicates unstable mental health which presents a threat of harm to [U]," and (4) "mother lacks the parenting skills, knowledge, motivation, and/or judgment necessary to safely parent [U]." The

juvenile court heard testimony and received exhibits, and the parties rested after the third day.[1]

The juvenile court reconvened the parties and counsel a month later to announce its jurisdictional findings and decision. Specifically, the court found that (1) "mother's erratic, impulsive and volatile behaviors interfere with her ability to safely parent," and that (2) "mother lacks the parenting skills, knowledge, and/or judgment necessary to safely parent." After dismissing the remaining allegations concerning mother's conduct, the court asserted dependency jurisdiction over U and moved directly to disposition.

DHS asked the court to "order the services that are listed in the family report."[2] The court, mother's lawyer, and mother, had this exchange just before the court announced its dispositional findings and orders:

"THE COURT: The Court heard testimony and received exhibits and is taking jurisdiction based on the following amended allegations to conform to the evidence: 4(a), the mother's erratic, impulsive, and volatile behaviors interfere with her ability to safely parent; and 4(d), the mother lacks the parenting skills, knowledge, and/or judgment necessary to safely parent.

"Father previously admitted, and so we'll proceed to disposition.

"And, [counsel], go ahead.

"* * * * *

"THE COURT:   [Mother's Counsel].

"[MOTHER'S COUNSEL]:   Your Honor, no objection to the services.

"Mom wants to have visitation and more than what she's getting.

"I also understand, you know, trying to do this in a way that's appropriate for the child, so we're open to that.

---

[1] Father admitted that he "needs the assistance of []DHS and the Court to protect the child from mother's abusive behaviors." He is not a party to this appeal.

[2] The "family report" referred to by counsel for DHS was not received into evidence by the juvenile court and it was stricken from the record on appeal on mother's unopposed motion.

"But we'll just have to move forward with what we have.

"THE COURT:   Okay. And are you stipulating to the factors for the psychological evaluation, or are you asking me to make the findings based on the record?

"[MOTHER'S COUNSEL]:   I would ask for the findings based on the record. I don't want to just blanket give them everything. Only the ones that are appropriate based on—

"THE COURT:   Okay.

"[MOTHER'S COUNSEL]:   —your findings.

"THE COURT:   Okay. Well, that—because that's—when I heard, 'No objection,' I wanted to make sure I understood what that was.

"[Mother], is there anything that you would like to say today, ma'am?

"[MOTHER]:   I object to all this.

"THE COURT:   Okay. That's noted.

"Here's where we're going to go."

The court then ordered mother to do the following: (1) participate in a parent training program; (2) maintain safe and stable housing; (3) participate in a mental health assessment; (4) participate in group mental health counseling; (5) participate in therapeutic services with the child as recommended by the child's therapist; and (6) keep the court, DHS, and her attorney apprised of any change in residence. The court explained why it was ordering those services and that it was not ordering a psychological evaluation:

"[THE COURT]:   For both parents, they are ordered to maintain safe and stable housing as approved by DHS, as well as participate in any therapeutic services for the child, as recommended by the child's treatment team or providers.

"I also am going to provide for parent training for both parents. And this needs to be tailored to the situation.

"I think mother will benefit from some particularized parent training that relates to the circumstances that brought us here.

"*****

"For mother, additionally, she is to participate in and successfully complete a mental health assessment with a [department]-approved provider, sign releases of information, follow recommendations, as well as participate in any individual or group counseling services with a [department]-approved provider and sign releases of information.

"Those are designed to address, I think, how she interacts with the child, how she interacts with others about her child.

"And the testimony in this case—there is this kind of hypersensitivity to a lot of things about what was going on with this particular child.

"And so any training or individual counseling that can be helpful with, like, what are red flags, what are concerns, how to communicate those—that's the idea behind that counseling.

"I'm not going to order the psychological evaluation at this point."

Mother now contends that the court was without authority to order her to engage in mental health services or to maintain safe and stable housing because it had dismissed the allegation pertaining to her mental health and because maintaining safe and stable housing does not constitute "treatment or training" as contemplated by ORS 419B.387.[3] In her view:

"Adequate counsel would have consulted with [her] prior to disposition and objected in the first instance. But, when counsel became aware in the courtroom that mother objected to all the disposition orders, adequate counsel would have advanced some legal argument as to why the court could not order mother to submit to orders that she opposed or for which it had no authority, or, moved for a continuance to consult further with the client and develop a legal argument on her behalf."

---

[3] ORS 419B.387 provides:

"If the court finds in an evidentiary hearing that treatment or training is needed by a parent to correct the circumstances that resulted in wardship or to prepare the parent to resume the care of the ward, the court may order the parent to participate in the treatment or training if the participation is in the ward's best interests."

We do not agree. We cannot say that no competent lawyer would have proceeded in the face of mother's response to the court's question without first consulting with her or otherwise advancing a legal argument in support of some objection.

The juvenile court had authority to require mother to participate in a mental health assessment and to maintain stable housing given its findings and conclusions and its explanation for why it ordered those services. The absence of the words "mental health" and "stable housing" in the jurisdictional bases found by the court does not automatically preclude it from requiring mother to participate in a mental health assessment or to maintain stable housing. The court explained that it was ordering the mental health assessment and services to address certain "interaction" and "communication" issues between mother and U, and between mother and others concerning U. The court "designed" mother's services to assist her in working toward reunification with U. That was enough to establish the required "more than tenuous[]" connection between the bases of jurisdiction and the mental health assessment and services ordered. *Dept. of Human Services v. F. J. M.*, 370 Or 434, 448, 520 P3d 854 (2022) ("We construe [ORS 419B.387] to require that a juvenile court's finding that particular treatment * * * is *needed* by the parent must be connected more than tenuously to the jurisdictional bases that the treatment is being ordered to correct, and that it must be based in and supported by the evidentiary record." (Emphasis in original.)). Additionally, mother did not develop on appeal her contention that the juvenile court lacked authority to require her to maintain stable housing, and we reject that contention for that reason as well. Stable housing is routinely ordered and mother presents no factual or legal objection or argument that all competent lawyers would have opposed such a basic requirement for safe parenting. *See Dept. of Human Services v. W. C. T.*, 314 Or App 743, 779, 501 P3d 44 (2021) (holding that a parent's "summary conclusion" that a juvenile court lacked authority to require her to maintain stable housing was undeveloped, and further noting that "such directions are part of a plan of services to parents" (internal quotation marks omitted)).

Finally, we reject without discussion mother's contention that she was prejudiced by any inadequacy in her lawyer because she is "at risk of being found in contempt of court and jailed" if she fails to comply with the court's dispositional orders.

Affirmed.