HADLOCK, J.
*114 *764 Defendant appeals a judgment of conviction for unlawful possession of a controlled substance, ORS 475.752, which the court entered following defendant's conditional guilty plea. The issue on appeal is whether the trial court erred when it denied defendant's motion to suppress evidence that police officers obtained during a traffic stop. On appeal, defendant concedes that the vehicle she was riding in was lawfully stopped. However, defendant argues that she was unlawfully seized when an officer subsequently conducted a dog sniff that extended the stop. Defendant further contends that the trial court should have suppressed evidence found as a result of the dog sniff because police obtained it as a result of the unlawful seizure. We agree with defendant that the dog sniff extended the detention of defendant in violation of the Fourth Amendment to the United States Constitution. Accordingly, we reverse and remand.
We state the facts consistently with the trial court's express findings and those implicit in its ruling, which the record supports. State v. Culley , 198 Or. App. 366, 374, 108 P.3d 1179 (2005). On the day in question, Coos Bay Officer Ereth was on patrol with Reserve Officer McGriff; they were accompanied by Buddy, a drug-detection dog. Defendant was a passenger in a car that Ereth stopped for traffic infractions. Ereth spoke with the driver and discovered that he did not have insurance. Ereth returned to his patrol car, gave McGriff the documents needed to issue a citation, and instructed McGriff to write the citation. As McGriff began writing the citation, Ereth took Buddy out of the car to conduct a dog sniff. While Ereth conducted the dog sniff, McGriff stopped writing the citation for about 30 seconds so he could, instead, provide cover to Ereth and Buddy.
Ereth walked Buddy around the car, in which defendant remained seated. Buddy alerted when Ereth was near the passenger door, which led Ereth to believe that controlled substances were (or recently had been) in the car. Ereth asked the driver to step out of the car, patted him down, then had him sit on the curb. Ereth repeated that process with defendant. Aside from perhaps saying hello, that was the first time Ereth and defendant exchanged words.
*765 Ereth then searched the car, found defendant's purse on the floorboard, and found controlled substances inside the purse.
Defendant moved to suppress the evidence found in her purse, as well as any derivative evidence, arguing that it was the fruit of an unlawful seizure. In her written suppression motion, defendant asserted that an officer had detained her beyond "the scope of the initial stop without reasonable suspicion that a crime had been committed." Defendant cited both Article I, section 9, of the Oregon Constitution and the Fourth Amendment in support of that argument. Defendant elaborated on her argument at the suppression hearing, asserting both that the dog sniff itself "constituted a stop" and that it "extended the stop" that had already occurred. The trial court denied the suppression motion. It rejected defendant's argument that the dog sniff constituted a seizure of defendant, explaining that the sniff would not have led defendant to believe that she was not free to leave. And, although the court acknowledged that McGriff stopped processing the traffic citation for about 30 seconds when he covered Ereth during the dog sniff, it ruled that the delay was not "significant." Finally, the court concluded that Ereth had probable cause to search the car once the dog alerted. Accordingly, the court denied defendant's *115 suppression motion. As noted, defendant executed a conditional guilty plea, reserving the right to challenge the court's denial of her suppression motion.
On appeal, defendant first contends that the dog sniff itself constituted a seizure of her person that violated Article I, section 9, because it would have led defendant to believe that she was under investigation for a crime and, therefore, not free to leave. In response, the state argues that defendant was not subject to the type of coercion or restraint of liberty that can give rise to a seizure.[1]
The parties' arguments implicate fundamental Article I, section 9, principles. Under Article I, section 9, only *766 some police-individual encounters constitute seizures that require justification to pass constitutional muster. State v. Backstrand , 354 Or 392, 398-99, 313 P.3d 1084 (2013). "What distinguishes a seizure (either a stop or an arrest) from a constitutionally insignificant police-citizen encounter 'is the imposition, either by physical force or through some show of authority, of some restraint on the individual's liberty.' " Id. at 399, 313 P.3d 1084 (quoting State v. Ashbaugh , 349 Or. 297, 309, 244 P.3d 360 (2010) ).
Here, defendant argues that she was seized through a show of authority because the dog sniff amounted to an accusation that she-as a passenger in a vehicle subject to the sniff-possessed illegal drugs. That argument does not survive State v. Sexton , 278 Or. App. 1, 378 P.3d 83 (2016). In Sexton , the defendant was a passenger in a stopped car; in that case-as here-an officer walked a dog around the car in which the defendant was riding and the dog alerted to the odor of controlled substances. Id. at 2-3, 378 P.3d 83. We held that the "drug sniff that occurred would not lead a reasonable person to believe that [the officer] had intentionally and significantly deprived defendant of liberty or freedom of movement." Id. at 7, 378 P.3d 83. Accordingly, we held, the dog sniff did not escalate the encounter to a seizure under Article I, section 9.
Defendant seeks to distinguish Sexton on the ground that, in this case-unlike in Sexton -the drug dog walked in front of the passenger door of the car in which she was sitting. Accordingly, defendant contends, Ereth and Buddy physically restrained her liberty because they must have temporarily blocked the passenger door "at some point." But the record does not reflect that either the officer or the dog blocked the passenger door more than momentarily. We therefore do not view the circumstances here as meaningfully different from those present in Sexton . Nor are we persuaded by defendant's argument that the dog sniff of the car in which defendant was a passenger was a seizure because it conveyed the message that she was under investigation for criminal activity. Words or conduct that suggest officers suspect possible criminal activity are not enough, standing alone, to constitute a seizure. State v. Anderson , 354 Or. 440, 453, 313 P.3d 1113 (2013) (an officer did not effect a seizure *767 merely by giving two individuals information that "objectively conveyed possible suspicion that [the individuals] could be involved in criminal activity"). Rather, only a "direct and unambiguous accusation" of unlawful activity can, by itself, amount to a seizure for purposes of Article I, section 9. See State v. Jackson , 268 Or. App. 139, 149, 342 P.3d 119 (2014) (when "an officer makes a direct and unambiguous accusation, the officer has conveyed that the citizen is not free to leave"). No such "direct and unambiguous accusation" is present here. Accordingly, the trial court did not err when it rejected defendant's suppression motion to the extent that it was based on an argument that she was unlawfully seized for purposes of Article I, section 9.
We turn to defendant's argument under the Fourth Amendment, in which she contends that the officers unconstitutionally extended the traffic stop when McGriff stopped processing the citation to cover Ereth while he walked Buddy around the car.
*116 The state contends that defendant did not preserve that argument for appeal. In that regard, the state observes that defendant did not mention the Fourth Amendment at the suppression hearing and it asserts that defendant did not then raise the same unlawful-extension argument that she makes on appeal. Defendant responds that the policies underlying the preservation rule were served in this case because (1) she raised the unlawful-extension argument in her written suppression motion by arguing that her detention "exceeded the scope of the initial stop without reasonable suspicion," (2) the state litigated the issue and developed the record by, for example, asking the officers whether there was an "unavoidable lull," and (3) the trial court ruled on defendant's Fourth Amendment argument by ruling that McGriff's covering of Ereth created no "significant" delay.
Although the question is close, we agree with defendant that her Fourth Amendment argument is adequately preserved for appeal because she alerted the trial court and the state to her contention that the stop was impermissibly extended when McGriff stopped processing the citation during the dog sniff. See generally State v. Parkins , 346 Or. 333, 341, 211 P.3d 262 (2009) ("[T]he preservation rule is *768 a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served."). First, although defendant did not differentiate her state and federal arguments at the suppression hearing, she did cite both Article I, section 9, and the Fourth Amendment in her suppression motion. See State v. Walker , 350 Or. 540, 550-51, 258 P.3d 1228 (2011) (the defendant's argument was preserved despite the fact that she did not differentiate the state and federal constitutional analyses; rejecting "a hard-and-fast rule that a failure to assert a difference between state and federal constitutional analysis is an impediment to appellate review"). Second, we agree with defendant that she raised the unlawful-extension argument with enough specificity to allow the state and the court to respond to it. At the beginning of the suppression hearing, defendant asserted that an unlawful seizure had occurred because the dog sniff "extended the stop." After the parties presented witnesses, the state responded to defendant's unlawful-extension argument, asserting that, because the dog alerted to the odor of controlled substances "while Officer McGriff was issuing the citation," there was "no unlawful extension of the initial traffic stop." Defendant then reiterated her argument that the dog sniff both effected a seizure itself (the Article I, section 9, argument that we rejected earlier in this opinion) and "was also an extension of the initial stop." And the trial court addressed that point explicitly, ruling that the sniff did not delay the "proceeding * * * in any significant way" because, although McGriff provided cover for Ereth during the dog sniff, "that was less than 30 seconds." Thus, the purposes of the preservation doctrine were adequately served because both the trial court and the state had an opportunity to address (and did address) the argument that defendant makes on appeal-that the stop was unlawfully extended when McGriff stopped processing the citation during Buddy's sniff of the car. See Walker , 350 Or. at 550, 258 P.3d 1228 (preservation turns on "whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error").
Defendant also has the stronger argument on the merits. "Unlike our analysis of traffic stops under Article I, *769 section 9, under the Fourth Amendment, a police officer 'effectively seizes everyone in the vehicle, the driver and all passengers' for the duration of a traffic stop." State v. Evans , 284 Or. App. 806, 814, 397 P.3d 42 (2017) (quoting Arizona v. Johnson , 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed. 2d 694 (2009) ). And, again under the Fourth Amendment, a stop based on an officer's observation of a traffic violation becomes unlawful "if it is prolonged beyond the time reasonably required to complete the mission" of the traffic stop. Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1612, 191 L.Ed. 2d 492 (2015) (citation and brackets omitted). Thus, a stop cannot lawfully be extended past the point at which "tasks tied to the traffic infraction are-or reasonably should have been-completed." *117 Id. at ----, 135 S.Ct. at 1614. Any measurable extension of the stop is impermissible. Id. at ----, 135 S.Ct. at 1615.
Because the mission of a traffic stop may involve determining whether to issue a ticket, making ordinary inquiries incident to the stop, and taking certain precautions to ensure officer safety, the stop may last long enough to allow an officer to engage in those activities. Id. at ----, 135 S.Ct. at 1614-15. But those "highway and officer safety" interests are "different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." Id. at ----, 135 S.Ct. at 1616. Accordingly, an officer may not conduct investigations unrelated to the stop's mission "in a way that prolongs the stop, absent * * * reasonable suspicion." Id. at ----, 135 S.Ct. at 1615. A dog sniff is aimed at detecting "ordinary criminal wrongdoing" and is "not an ordinary incident of a traffic stop." Id. at ----, 135 S.Ct. at 1615. Thus, if a dog sniff is conducted without reasonable suspicion of criminal activity, the "critical question" that must be asked in determining whether the sniff violates the Fourth Amendment is whether the sniff "adds time to" the stop. Id. at ----, 135 S.Ct. at 1616.
In this case, that question is easily answered. It is undisputed that McGriff stopped processing the traffic violation for a measurable amount of time to provide cover while Ereth walked Buddy around the car in which defendant was sitting. Thus, the dog sniff extended the duration *770 of the traffic stop which, under the Fourth Amendment, constituted a seizure of defendant. The state does not con-tend that the extension of the stop was justified by reasonable suspicion of criminal activity, and we conclude that the officers' extended seizure of defendant violated the Fourth Amendment. Moreover, the state has not argued that discovery of the pertinent evidence was so attenuated from the unlawful police conduct that the evidence could be admitted despite that illegality. See State v. Bailey , 356 Or. 486, 508, 338 P.3d 702 (2014) (state has "burden to establish attenuation" for purposes of the federal exclusionary rule). Accordingly, the trial court erred when it denied defendant's suppression motion.
Reversed and remanded.

In keeping with the "first things first" doctrine, we address defendant's Article I, section 9, argument before turning to her Fourth Amendment argument. See State v. Jones , 275 Or. App. 771, 778 n. 6, 365 P.3d 679 (2015) (explaining that approach).