JAMES, J.
*294 Defendant appeals a judgment of conviction for driving while suspended, ORS 811.182(4), assigning error to the trial court's denial of defendant's motion to suppress. Defendant asserts that statements made during his encounter with the officer should be suppressed because he was unlawfully seized in violation of Article I, section 9, of the Oregon Constitution. The state argues that defendant was not stopped, and defendant's interaction with the officer was a mere encounter. The state does not argue that if the encounter did constitute a stop, then the stop was otherwise lawful. We agree with defendant and, accordingly, reverse and remand.
"In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact that are supported by evidence in the record." State v. Holdorf , 355 Or. 812, 814, 333 P.3d 982 (2014). "We state the facts consistently with the trial court's explicit and implicit factual findings, which the record supports." State v. Keller , 280 Or. App. 249, 250, 380 P.3d 1144 (2016). The facts of the encounter are largely undisputed.
Deputy Weaver was driving his marked patrol car down a city street after dark on the evening of December 26, 2015. Weaver pulled up beside defendant in the parallel lane, and made eye contact with him. Defendant seemed startled and abruptly turned off into a parking lot that contained a drive-through coffee business; Weaver understood defendant's facial expression upon making eye contact to mean defendant thought "[O]h, there's the cops." Although Weaver acknowledged that pulling off the road after making eye contact with a police officer was not a crime and that people often move out of the way for his patrol car, Weaver turned off into another parking lot, and drove in a circular direction in order to observe defendant because *1143 "it was very clearly [sic ] that he just pulled off because it was the police."
Weaver saw defendant pull through the coffee stand drive-through, but defendant did not order anything. Weaver testified that once defendant saw Weaver turn off the roadway into the other parking lot, defendant proceeded back into the roadway "abruptly." Weaver was unable to see *295 defendant when defendant re-entered the roadway, but believed "there was absolutely no possible way for him to come to a complete stop" before re-entering the roadway based on the speed at which defendant had been traveling. However, because Weaver was not able to see defendant at the time he re-entered the roadway, he never actually saw defendant fail to stop.
Because Weaver could not visually confirm that defendant had not stopped prior to entering the roadway, he wanted "to try to get a better, essentially, moving violation" so he pulled his patrol car behind defendant. Defendant saw Weaver behind him again, and quickly and abruptly turned his vehicle into another parking lot and parked. Weaver pulled into the same parking lot and approached defendant's vehicle. Weaver was in uniform and displaying his badge. Weaver did not activate his overhead lights, nor did he activate his siren. Weaver also did not block defendant's car with his patrol car.
When Weaver encountered defendant, he was sitting in his vehicle and appeared to be waiting for Weaver to approach. His young daughter and pet dog were also present in the vehicle. Weaver testified that his standard practice is to always try and phrase the language he uses in interactions as a question, because Weaver is "conscientious of *** trying to always make it a mere encounter." With that aim, Weaver asked defendant, "Is there any reason or do you want to tell me why you're trying to avoid me?"
Defendant responded, "I'm suspended." Weaver testified that there might have been a follow-up question regarding defendant's level of suspension and as a result it was evident that defendant was criminally suspended, which led Weaver to believe he had probable cause of a crime. Defendant was handcuffed and Weaver checked his information to confirm that defendant was driving with a suspended license. Defendant was cited for driving while suspended.
Before trial, defendant moved to suppress "any and all statements of [defendant], [and] any and all observations made by the police, *** resulting from [the] unlawful stop and subsequent arrest." The trial court denied the motion *296 and defendant entered a conditional plea to driving while suspended, ORS 811.182(4), reserving his right to appeal the denial of his motion to suppress.
On appeal, defendant renews his arguments from the trial court, assigning error to the denial of the motion to suppress any and all statements made by defendant, and any and all observations made by the police resulting from the stop in December 2015. We review the denial of a motion to suppress for errors of law. State v. Underhill , 269 Or. App. 647, 648, 346 P.3d 1214, rev. den. , 357 Or. 743, 361 P.3d 608 (2015).
Defendant argues that a reasonable person in defendant's position would have believed that the officer intentionally and significantly restricted his freedom of movement by following him into two different parking lots, and then when defendant gave up trying to get away from the officer, asking defendant why he was avoiding the officer when the officer did not suspect defendant of a crime. Defendant argues that he was therefore unlawfully seized under Article I, section 9, and, consequently, the trial court erred in denying defendant's motion to suppress. The state argues that the encounter between the officer and defendant was not a stop, but a mere encounter, and was not a violation of Article I, section 9.
The Supreme Court has recognized three categories of police-civilian encounters: (1) a mere encounter; (2) a stop; and (3) an arrest. State v. Backstrand , 354 Or. 392, 399, 313 P.3d 1084 (2013) ; State v. Fair , 353 Or. 588, 593-94, 302 P.3d 417 (2013). Mere encounters-sometimes referred to as mere conversation-are noncoercive encounters that do not implicate Article I, section 9. A law enforcement officer, like any citizen, engages with people in a wide variety of ways throughout her or his day. Ordering coffee, *1144 exchanging greetings, chatting about shared interests, and even asking for identification and requesting aid, are all encounters that typically do not implicate Article I, section 9. Backstrand , 354 Or. at 410, 313 P.3d 1084.
In contrast to mere encounters, "[b]oth stops and arrests are seizures for constitutional purposes." Fair , 353 Or. at 593-94, 302 P.3d 417. "A seizure of a person occurs under *297 Article I, section 9, of the Oregon Constitution : (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred." State v. Ashbaugh , 349 Or. 297, 316, 244 P.3d 360 (2010) (internal quotation marks omitted). In other words, in order for a seizure to occur "[e]xplicitly or implicitly, an officer must convey to the person with whom he is dealing, either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." Backstrand , 354 Or. at 401, 313 P.3d 1084 ; State v. Benning , 273 Or. App. 183, 189, 359 P.3d 357 (2015) (quoting same).
Questions from an officer alone will not elevate a mere encounter to a seizure; something more than just asking a question, requesting information, or seeking cooperation is required in order for the encounter to rise to the level of a seizure. Backstrand , 354 Or. at 403, 313 P.3d 1084. "[A] seizure exists only if the officer's conduct would be reasonably perceived as coercive in the sense that it would cause the citizen to reasonably believe that the officer is intentionally restraining the citizen's liberty or freedom of movement in a significant way-that is, in a way that exceeds the bounds of ordinary social encounters between private citizens." Id. at 400, 313 P.3d 1084. A nonexclusive list includes the content or manner of questioning or the accompanying physical acts by the officer, if those additional factors could "reasonably be construed as a 'threatening or coercive' show of authority requiring compliance with the officer's request." Id. at 403, 313 P.3d 1084 ; Ashbaugh , 349 Or. at 317, 244 P.3d 360 (holding encounter between officer and defendant did not involve a show of authority where conversation between the two was relaxed and nonconfrontational).
With that legal framework in mind, we now look to the totality of the circumstances presented in this case and ask if a reasonable person in defendant's position would believe that the officer was restraining his liberty or freedom of movement in a significant way. Backstrand , 354 Or. at 401, 313 P.3d 1084. The totality of circumstances includes not just Weaver's statement at the car, but the entirety of the encounter.
*298 The first key aspect of this encounter affecting our analysis is Weaver's dogged pursuit of defendant. Weaver followed defendant in an obvious fashion on a road, and through not one, but two separate parking lots because defendant made eye contact and did not appear to want to interact. Defendant, aware of Weaver's obvious and open following, eventually relented and parked. According to Weaver, when he approached defendant's car, defendant appeared to be waiting to be contacted by Weaver.
The second key aspect of this encounter is Weaver's statement immediately upon contacting defendant. Weaver stated, "Is there any reason or do you want to tell me why you're trying to avoid me?" Although framed as a question, it is confrontational in the context of this interaction. Weaver testified that he always employs this phrase to "make it a mere encounter." But a rising tone, or a question mark at the end of a sentence, is not a talisman that automatically transmutes a police-citizen interaction into a "mere encounter." What Weaver subjectively hoped to accomplish by employing that question is beside the point. Under Article I, section 9, whether a police-citizen interaction amounts to a seizure turns on the objective assessment of whether a reasonable person in defendant's position would believe that he was not free to go about his ordinary affairs. The choice of the word "avoid" would strongly imply to a reasonable person in defendant's situation that defendant had a duty or obligation to stop and interact with Weaver. The question implies that defendant is engaged in behavior that is nefarious and warrants explanation. The question makes it *1145 clear that Weaver had been following defendant, both parties knew defendant was aware he was being followed, and that defendant was now "caught" and must stay to explain himself.
Such a phrase, when coupled with the obvious and open following of defendant can undermine a reasonable person's belief that they have an option other than remaining and answering the officer's questions. In this way, this case is similar to State v. Musser , 356 Or. 148, 335 P.3d 814 (2014). There, the Supreme Court held that the defendant was seized, reasoning:
*299 "[A] police officer saw defendant on a walkway behind a shopping center at a time when most of the businesses were closed. The area was one where the officer knew that illegal conduct took place. The officer directed defendant to come speak to him, saying, 'Hey, I need to talk to you.' When defendant continued walking, the officer stated, in a 'more direct, firm tone,' 'Hey, come back here. I need to talk to you.' Defendant complied. *** Here, the police order to defendant to return and talk to the police, rather than to continue in the direction she was heading, clearly indicated to defendant that she had no choice but to respond to the order, bringing her significantly under the control of the police."
Id. at 156-57, 335 P.3d 814.
Ultimately, in discerning the fine line between a stop and a mere encounter, we ask whether the conduct by the officer went "significantly beyond that accepted in ordinary social intercourse." Backstrand , 354 Or. at 415, 313 P.3d 1084. Under the totality of the circumstances presented here, it did. The dogged following, in conjunction with a confrontational question implying that avoiding an officer is suspicious, and deserving of explanation, would lead a reasonable person to believe that he was not free to go about his ordinary affairs. We therefore conclude that defendant was seized in violation of Article I, section 9.
Reversed and remanded.