JAMES, J.
*1132 *689 In this criminal appeal, defendant appeals the denial of his motion to suppress evidence discovered as the result of a search of a truck in which he was a passenger. On appeal, defendant raises arguments under both the state and federal constitutions. For purposes of the Fourth Amendment to the United States Constitution, defendant argues that his lawful seizure that occurred when the vehicle was stopped for a traffic infraction was unlawfully extended by the deployment of a drug detection dog. Because of factual inconsistencies in the trial court's ruling on the Fourth Amendment issue, and because the trial court made its ruling without the benefit of critical case law from this court and the United States Supreme Court, we vacate and remand for the trial court to expressly address the Fourth Amendment standard regarding the unlawful extension of a stop, and for any additional factfinding that may be necessary.
"We review the trial court's denial of the motion to suppress for legal error." State v. Miller , 267 Or. App. 382, 383, 340 P.3d 740 (2014). "In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact that are supported by evidence in the record. We state the facts consistently with the trial court's explicit and implicit factual findings, which the record supports." State v. Leiby , 293 Or. App. 293, 294, 427 P.3d 1141 (2018) (internal quotation marks and citations omitted).
Defendant was one of two passengers in a small pickup truck that was pulled over for a traffic violation. It was a single cab pickup truck and all three people in the truck-the driver, the middle passenger, and defendant-were sitting on the same bench seat. Upon contact with the driver, Coos Bay Police Officer Volin noticed that the middle passenger was not wearing a seatbelt. Volin requested identifying documents from both the driver and the middle passenger. The middle passenger was unable to produce identification but gave her name and date of birth. Volin contacted dispatch and, while the driver was "clear and valid," dispatch was unable to locate the middle passenger's information. Volin returned to the vehicle to ask if she *690 had a driver's license, and the middle passenger provided Volin with an expired debit card. It was apparent at that point that Volin likely had misheard the name she provided earlier. Volin then returned to his vehicle to give dispatch the middle passenger's name. Dispatch then informed Volin that the middle passenger had a warrant out for her arrest. Volin confirmed the warrant, which was out of a different county.
It was during that time that a second officer, Scoville, of the Coquille Tribal Police Department, arrived with his drug detection dog. A third officer arrived shortly after. After the warrant was confirmed, Volin returned to the vehicle to advise the passenger that she had a warrant and needed to step out of the vehicle. The middle passenger brought a bag she was using as a purse with her when she got out of the vehicle. Volin and the third officer were located on the sidewalk-on the passenger side of the vehicle-while they took the middle passenger into custody. As she was being taken into custody, Scoville's drug detection dog scratched at the purse while it was on the ground, which is the signal that the dog has located drugs. Scoville, who did not stop to examine the contents of the purse, proceeded to put the dog back in his car, before again removing the dog to conduct a pass around the truck. Volin inspected the purse and was unable to locate any drugs. After Volin searched the purse and found no drugs, Scoville began the pass around the truck at the rear passenger-side bumper with the drug detection dog and proceeded in a counter-clockwise path towards the front passenger bumper. When the dog reached the passenger window, she alerted to the presence of drugs. At that point, Scoville made contact with defendant.
According to the testimony offered at trial, that was the first contact that any officer had with defendant. Defendant was informed that the dog had signaled at the window, and *1133 defendant was asked to get out of the vehicle. Defendant was Mirandized and was then informed that the truck would be searched. At some point, defendant informed Scoville that there were drugs in his backpack.
At that point, Scoville informed Volin that defendant had disclosed that there were drugs in his backpack.
*691 Volin received consent from defendant to search the backpack. Volin asked defendant where the drugs would be located in the bag, and then searched it, starting in the location where defendant told Volin the drugs would be found. Volin located a methamphetamine pipe, a marijuana pipe, and a small amount of marijuana. At some point after contacting defendant, Volin was informed that defendant was on probation, and defendant was placed into custody. The driver received a verbal warning for his faulty equipment, and a citation for an undisclosed reason that was not related to the traffic infraction, after both passengers had been processed. Defendant subsequently pleaded guilty to, and was convicted of, possession of methamphetamine, ORS 475.894. Defendant appeals that conviction.
On appeal, defendant advances two arguments. First, he argues that he was unlawfully seized under Article I, section 9, of the Oregon Constitution when the drug dog was deployed around the truck while defendant was still inside because that conduct "transgressed ordinary social interaction," and a reasonable person in his situation would have believed that his liberty was curtailed. Second, defendant argues that his seizure was unlawful under the Fourth Amendment because the traffic stop was unlawfully extended by the dog sniff and ensuing investigation. The state argues, for purposes of Article I, section 9, that a dog sniff of the outside of a vehicle stopped for a traffic violation is not a seizure of a passenger, in this case, defendant. The state does not respond to the merits of defendant's argument under the Fourth Amendment, arguing only that it is unpreserved.
At the outset of our analysis, it is important to recognize that, in Oregon, a passenger in a vehicle that is stopped by police is Schrödinger's passenger-he exists in two potential states, both seized and not seized, and only one of those potential states becomes reality depending on the lens through which we observe him. Viewing the encounter through the lens of Article I, section 9, the passenger is not seized when the vehicle is stopped. In State v. Amaya , 336 Or. 616, 89 P.3d 1163 (2004), the Oregon Supreme Court stated that stopping the driver of a car does not constitute a seizure of the passengers for the purposes of Article I, section 9.
*692 That holding was recently reiterated in State v. Stevens , 364 Or. 91, 100, 430 P.3d 1059 (2018). In contrast, viewing the encounter through the lens of the Fourth Amendment, "a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers" "for the duration of a traffic stop." State v. Bailey , 356 Or. 486, 507, 338 P.3d 702 (2014) (citing Arizona v. Johnson , 555 U.S. 323, 327, 129 S. Ct. 781, 172 L.Ed.2d 694 (2009) ; Brendlin v. California , 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L.Ed.2d 132 (2007) ).
With that difference in the status of a passenger seizure in mind, we turn now to defendant's state constitutional argument in this case. "We review for legal error whether a police officer's interaction with an individual amounts to an unlawful seizure under Article I, section 9." State v. Sexton , 278 Or. App. 1, 4, 378 P.3d 83 (2016). In light of Amaya and Stevens , to prevail under a state constitutional analysis, defendant must identify some act that constituted the seizure, other than the vehicle stop. Here, defendant argues that police unlawfully seized him when the dog was deployed around the vehicle.
"A seizure of a person occurs under Article I, section 9, of the Oregon Constitution : (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred." State v. Ashbaugh , 349 Or. 297, 316, 244 P.3d 360 (2010) (internal quotation marks and emphasis omitted). In other words, "[a] seizure exists only if the officer's conduct would be reasonably *1134 perceived as coercive in the sense that it would cause the citizen to reasonably believe that the officer is intentionally restraining the citizen's liberty or freedom of movement in a significant way-that is, in a way that exceeds the bounds of ordinary social encounters between private citizens." State v. Backstrand , 354 Or. 392, 400, 313 P.3d 1084 (2013). "A nonexclusive list includes the content or manner of questioning or the accompanying physical acts by the officer, if those additional factors could reasonably be construed as a threatening or coercive show of authority requiring compliance with the *693 officer's request." Leiby , 293 Or. App. at 297, 427 P.3d 1141 (internal quotation marks omitted).
In State v. Rosales , 291 Or. App. 762, 766, 423 P.3d 112 (2018), we held that the dog sniff was not a seizure of the passenger, relying on our decision in Sexton , 278 Or. App. at 5, 378 P.3d 83. In Rosales , we concluded that whatever insinuation conveyed by the dog sniff that the defendant was under investigation for criminal activity was not enough to effectuate a seizure. We concluded that "only a direct and unambiguous accusation of unlawful activity can, by itself, amount to a seizure for purposes of Article I, section 9." Id. at 767, 423 P.3d 112 (internal quotation marks omitted); see State v. Jackson , 268 Or. App. 139, 149, 342 P.3d 119 (2014).
Rosales compels the same result here. In this case, the sniff of the outside of the truck was not a "direct and unambiguous" accusation that defendant was engaged in unlawful activity. It was not defendant's truck, and defendant was not contacted nor was an investigation into defendant begun until after the dog signaled that it had detected narcotics in the vehicle. Defendant was not seized within the meaning of Article I, section 9, and the trial court did not err in denying defendant's motion to suppress based on that argument.
We turn then to defendant's argument under the Fourth Amendment. Under that analytical framework, defendant was lawfully seized when the truck was stopped, and defendant argues that the stop was unlawfully extended by the dog sniff. We first address the issue of preservation as raised by the state. The state agrees that defendant cited the Fourth Amendment in his motion to suppress but argues that the issue is unpreserved because he developed no argument in reliance on the Fourth Amendment in the trial court. We find the record to be contrary to the state's assertion that no argument was developed in the trial court.
Before the trial court, defense counsel raised multiple arguments, much like he does on appeal. As he described his argument to the trial court:
"I would also submit, kind of as the second part of my-or, I guess it's maybe the-the third part of my Omni Motion, *694 that the-the deployment of the dog, and the subsequent asking [defendant] to get out of the vehicle, was an extension of the stop, and an unreasonable extension of the stop."
Because defendant, as a passenger in the vehicle, was not stopped under the Oregon Constitution-a legal holding well-established by Amaya at the time of this motion hearing-the only plausible reading of defendant's argument about the extension of the stop is as an argument under the Fourth Amendment, a source of authority defendant directly cited in his motion.
Under the framework set out in State v. Hitz , 307 Or. 183, 188, 766 P.2d 373 (1988), the descending hierarchy of importance in evaluating whether an issue is preserved is first and most important, identifying the issue; second, and less important, identifying the source of law; and third, and least important, the particular argument. " '[I]t is essential to raise the relevant issue at trial, but less important to make a specific argument or identify a specific legal source with respect to the issue raised.' " State v. Stevens , 328 Or. 116, 122, 970 P.2d 215 (1998).
Here, defendant identified the issue-an unlawful extension of the stop-and cited the applicable federal constitutional basis. Although defendant did not explicitly identify the Fourth Amendment in his closing argument, we find that the practical purposes for preservation were served here. The court was aware of the issue and would have been *1135 able to rule on it. In fact, in this case, the court did rule on the issue, discussing whether the stop was extended.
Having rejected the state's argument on preservation, we turn now to the merits. Our task is made significantly more complicated, however, due to the failure by the state to respond at all to the merits of defendant's Fourth Amendment argument. While issues of preservation, harmless error, and such matters are important to appellate review, the choice by a litigant to focus exclusively on preservation at the expense of responding on the merits can be problematic, unless it is absolutely clear that an issue is unpreserved.
For the litigant, there is significant risk in failing to respond to the merits of an opponent's argument. We rely on *695 parties to frame the contours of the legal issues presented in a case, and we will not endeavor to fill the void purposefully created by a party's tactical choices. "[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself." Beall Transport Equipment Co. v. Southern Pacific , 186 Or. App. 696, 700 n. 2, 64 P.3d 1193, adh'd to on recons , 187 Or. App. 472, 68 P.3d 259 (2003).
For the court, the decision by a party to not respond on the merits of an argument creates tension between the principle from Beall discussed above, with the concomitant principle that we have "an independent obligation to review the rulings of the trial court for errors of law." State v. Remsh , 221 Or. App. 471, 475, 190 P.3d 476 (2008) ; see State v. Bea , 318 Or. 220, 224, 864 P.2d 854 (1993) (explaining that, even in the case where a respondent concedes error, we cannot accept that concession without concluding that an error occurred). When a respondent fails to address the merits of an issue-to argue why something was not error-that silence subtly conscripts the court into that role, and in so doing, risks casting a cloud over perceptions of fairness and impartiality. It is, in short, a practice to be avoided, unless the issue is unarguably unpreserved.
Having sufficiently admonished, we now focus on the constitutional question. Under the Fourth Amendment, a stop based on an officer's observation of a traffic violation becomes unlawful "if it is prolonged beyond the time reasonably required to complete the mission" of the traffic stop. Rodriguez v. United States , --- U.S. ----, 135 S. Ct. 1609, 1612, 191 L.Ed.2d 492 (2015) (citation and brackets omitted). Accordingly, the Fourth Amendment prohibits the extension of a stop beyond the point at which "tasks tied to the traffic infraction are-or reasonably should have been-completed." Id. at ----, 135 S. Ct. at 1614. Any measurable extension of the stop is impermissible. Id. at ----, 135 S. Ct. at 1615.
In Rosales , 291 Or. App. 762, 423 P.3d 112, we addressed whether a dog sniff had unlawfully extended a traffic stop for purposes of the Fourth Amendment. In that case, the defendant was *696 a passenger in a vehicle that was stopped for traffic infractions by a Coos Bay police officer, one reserve officer, and their drug dog. Id. at 764, 423 P.3d 112. Upon contact with the driver, the police officer discovered that the driver did not have insurance. The officer returned to his car and gave the reserve officer the documentation needed to issue a citation and instructed the reserve officer to write the citation. While the reserve officer was writing the citation, the officer took the dog around the vehicle. While the dog sniff was taking place, the reserve officer stopped writing the citation for roughly 30 seconds to provide cover to the officer and the dog. The defendant remained seated in the car during the sniff. The dog alerted when near the passenger door and led the officer to believe that controlled substances were in the car. The driver was removed from the car, where he was patted down and then instructed to sit on the curb. The same procedure occurred with the defendant, with whom the officer had not previously spoken beyond possibly saying hello. The officer then searched the car, found the defendant's purse on the floor of the car, and located controlled substances within the defendant's purse. Id. at 765, 423 P.3d 112. *1136 We held that, under the Fourth Amendment, the defendant was seized when the car was stopped and that,
"[b]ecause the mission of a traffic stop may involve determining whether to issue a ticket, making ordinary inquiries incident to the stop, and taking certain precautions to ensure officer safety, the stop may last long enough to allow an officer to engage in those activities. But those 'highway and officer safety' interests are 'different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular.' Accordingly, an officer may not conduct investigations unrelated to the stop's mission 'in a way that prolongs the stop, absent *** reasonable suspicion.' A dog sniff is aimed at detecting 'ordinary criminal wrongdoing' and is 'not an ordinary incident of a traffic stop.' Thus, if a dog sniff is conducted without reasonable suspicion of criminal activity, the 'critical question' that must be asked in determining whether the sniff violates the Fourth Amendment is whether the sniff 'adds time to' the stop."
Id. at 769, 423 P.3d 112 (internal citations omitted; asterisks in original). We concluded the analysis in Rosales by explaining that *697 because the officer who was issuing the citation stopped processing the traffic violation for a measurable time-30 seconds-to provide cover while the dog sniff was conducted, the dog sniff "extended the duration of the traffic stop, which under the Fourth Amendment, constituted a seizure of defendant." Id. at 769-70, 423 P.3d 112.
Here, as in Rosales , the " 'critical question' that must be asked in determining whether the sniff violates the Fourth Amendment is whether the sniff 'adds time to' the stop." 291 Or. App. at 769, 423 P.3d 112 (quoting Rodriguez , --- U.S. ----, 135 S. Ct. at 1616 ). The record here, as developed through testimony at the suppression hearing, is subject to multiple competing interpretations. The delay in processing the vehicle stop came about because of the execution of the arrest warrant on the female passenger. Some testimony indicates that she was in custody before the dog was deployed around the vehicle. Other testimony, in contrast, indicates that the dog was deployed while the passenger was being taken into custody.
In the absence of express findings addressing that evidence, we ordinarily would presume that the trial court resolved factual disputes consistently with its ultimate decision-in this case, its ruling denying the motion to suppress. See Ball v. Gladden , 250 Or. 485, 487, 443 P.2d 621 (1968). However, that presumption only applies "in the absence of an indication that the court misapprehended the import of defendant's argument." State v. Ryan , 361 Or. 602, 625, 396 P.3d 867 (2017) ; see also Pereida-Alba v. Coursey , 356 Or. 654, 671, 342 P.3d 70 (2015) (explaining that the Ball presumption "has its limits" and that an implicit finding will not be attributed to a court that never made any findings regarding the factual issue in question). In other words, we attribute a finding of fact only where "we can deduce that the trial court's chain of reasoning must necessarily have included that fact as one of its links." State v. Lunacolorado , 238 Or. App. 691, 696, 243 P.3d 125 (2010), rev. den. , 350 Or. 530, 257 P.3d 1020 (2011).
The trial court's ruling in this case, which was made in 2014 without the benefit of Rodriguez or Rosales , leaves us with some doubt as to whether the court applied *698 the correct Fourth Amendment standard in ruling on the extension issue and, consequently, whether the court necessarily resolved whether the sniff added time to the stop. That is because the court's reasoning appears internally inconsistent-stating both that the stop "certainly was extended" and that "I don't think the stop was extended at any point"-and makes no reference to whether the sniff itself added time:
"The stop certainly was extended, because the officer has to verify what was going on with both of them. Once he found out there was a Felony-Felony Warrant out, he had to take care of that-that situation before he went on to take care of a minor traffic violation. And, so I don't think the stop was extended at any point."
Under the circumstances, we vacate and remand for the trial court to expressly address the Fourth Amendment standard regarding the unlawful extension of a stop, and *1137 for any additional factfinding that may be necessary.[1]
Vacated and remanded for reconsideration of defendant's Fourth Amendment argument; otherwise affirmed.

As noted earlier, the state did not respond on the merits to defend the trial court's expressed reasoning.