398 April 8, 2026 No. 289

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of P. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

P. G.,
*Appellant.*

Clackamas County Circuit Court
22JU02528; A187366

Thanh H. Tran, Judge. (Judgment dated March 24, 2025)

Colleen F. Gilmartin, Judge. (Order dated March 31, 2025)

Argued and submitted on December 17, 2025.

Elena C. Stross, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

In this juvenile dependency case, mother appeals from the juvenile court's judgment establishing a guardianship for her child and denying mother's motion to dismiss jurisdiction and terminate the juvenile court's wardship over her child, and the order denying her request for appointed counsel. Mother raises six assignments of error, all of which raise essentially the same claim: that the juvenile court erred in denying mother's request for a fourth court-appointed attorney. In mother's view, that error resulted in her proceeding *pro se* at a hearing where the court denied mother's motion to dismiss and granted the Oregon Department of Human Services's (ODHS's) motion to establish a general guardianship of mother's child. We conclude that the juvenile court erred in denying mother's request for counsel for the hearing after it determined that she was entitled to counsel under the requirements of ORS 419B.205(1). We therefore reverse the judgment establishing the guardianship and denying mother's motion to dismiss and remand to appoint counsel for mother for a new hearing on the guardianship petition.

FACTS

The relevant procedural facts are as follows. In July 2022, the juvenile court found mother's child to be within its dependency jurisdiction. Two years later, the juvenile court convened a permanency hearing over multiple days before Judge Karabeika. In April, on the fourth day of the hearing, mother's second court-appointed attorney moved to withdraw. Judge Karabeika granted the motion to withdraw and appointed a third attorney to represent mother. In the order granting the motion to withdraw, Judge Karabeika stated, "Mother will get no more attorneys on this case. (This will be her third). May 31st date is date certain. The case will resolve on that date." (Underscoring in original.) At the end of the permanency hearing, the juvenile court approved a plan change to guardianship for mother's child.[1]

Mother's third attorney later moved to withdraw on the basis that "[t]he attorney-client relationship is such that

---

[1] Mother separately appealed this permanency judgment, which we affirmed without written opinion. *Dept. of Human Services v. P. M. G.*, 337 Or App 599, 563 P3d 412, *rev den*, 373 Or 712 (2025).

[he could not] continue to represent [mother,]" noting that mother had also asked the attorney to withdraw. A different judge, Judge Gilmartin, granted the motion, leaving mother without counsel.

In October 2024, mother filed a motion to dismiss and appeared a few days later without counsel for a review hearing before Judge Gilmartin. The Oregon Department of Human Services' (ODHS's) attorney told the court, "I think it would be prudent [for] the court to have a colloquy with mother regarding proceeding *pro se* and if there's any waivers that this court usually has for mother to sign, I'd ask that she sign those." Judge Gilmartin noted that she "share[d] the thoughts of [ODHS's counsel]" and asked mother if she wanted an attorney, to which mother responded, "I do." ODHS's attorney then informed Judge Gilmartin about Judge Karabeika's order limiting mother to three court-appointed attorneys. Mother explained what she viewed as the reason for her third attorney's withdrawal, namely that she had felt "strongly towards the motion to dismiss, and [her attorney] was reluctant" to pursue the motion before mother had completed an anger management course. Judge Gilmartin noted that mother's explanation was different from the reason provided in the third attorney's affidavit and told mother, "You have been appointed numerous court-appointed attorneys that have ended with them asking to withdraw, and that does cause the court reluctance to wanting to or being willing to appoint yet another one moving forward." Mother acknowledged that she "did ask the last two attorneys to withdraw" but reiterated that she still wanted another court-appointed attorney.

After reviewing Judge Karabeika's order, Judge Gilmartin told mother she could not appoint another attorney for her,[2] noting that "[t]he court won't appoint, appoint, appoint." Judge Gilmartin explained to mother that, at the dismissal hearing, it "would be [her] responsibility to prove why the case needed to be dismissed" and that doing so "is a very difficult thing to do" without legal counsel. ODHS's attorney asked the court to "advise mother [of] the risks of

---

[2] Judge Gilmartin entered a written order to this effect over six months after the hearing, from which mother also appeals.

proceeding *pro se*" and that "she does have a right to hire her own attorney." Judge Gilmartin then told mother, "[R]epresenting yourself as a non-lawyer is very, very difficult. \*\*\* Will you be hiring an attorney?" Mother responded, "I will," and Judge Gilmartin continued with the review hearing but postponed the hearing on the motion to dismiss to allow mother the opportunity to hire counsel.

Less than a week later, Judge Gilmartin held a status hearing to determine if mother had hired counsel. Mother told the court that she had tried to find an attorney and was still planning on finding one but didn't know if she could afford one. Judge Gilmartin then stated that the court would address mother's motion to dismiss at the scheduled dismissal hearing regardless of whether mother obtained representation, noting that mother had been "told seven months ago, maybe six months ago, that [she] would not be provided another court-appointed attorney" and so had "plenty of notice on this."

A few months later, mother filed a motion for appointed counsel, and ODHS later filed a motion to establish a general guardianship of the child under ORS 419B.366. In March 2025, the juvenile court, with Judge Tran presiding, convened the trial on both motions. Judge Tran first addressed mother's request for a fourth appointed attorney. ODHS's counsel informed Judge Tran about Judge Karabeika's and Judge Gilmartin's prior rulings on the issue. Judge Tran then explained to mother,

> "[Judge Karabeika's] order appears to say that you aren't going to be allowed another attorney. My slight hesitation is that ORS 419B.205 says in some circumstances you are— have a—you have a right to have an attorney, but there's certain elements that have to be considered.
>
> "The assumption based on Judge Karabeika and Judge Gilmartin's prior rulings is they've made that determination already and so they've already gone through the analysis as to whether those four prongs apply and you need counsel.
>
> "And it appears that that has—they—they don't think that you need another attorney."

Mother responded that she believed Judge Karabeika's ruling only applied up until the date on the order (May 31, 2024) at which "the case was to be wrapped up." Judge Tran rejected this argument, and asked mother if she wanted the court to know anything else before it decided whether to appoint counsel. Mother and Judge Tran then engaged in the following conversation:

"[MOTHER]:   I have no idea about evidentiary ruling—like, I—there was a big book and I wasn't able to obtain it. So I—I don't know what was in it and I have no idea, like, what I'm doing really.

"I did the best I could filing motions, but a lot were returned 'cause I filed them improperly. And I will do my best if you decide that this should stand being without the attorney. But I do request if I could have an attorney I think that I would be in a more secure spot or at least feel as if my rights are being protected more.

"THE COURT:   Okay. And I understand that. The—the dilemma we have is, one, and most important from this court is that [mother's child] has been waiting for a—a resolution on this.

"[MOTHER]:   Mm-hmm.

"THE COURT:   The other part is the state also has a right to have this process move forward. And, finally, there hasn't been any indication from you letting me know why it's going to be any different if I grant another—another request for another attorney that we're not back here in two months with that other attorney withdrawing. And we're back to, unfortunately, having everyone wait for a decision by this court.

"[MOTHER]:   I understand.

"THE COURT:   So—so right now you're not telling me anything different that says, 'I'm not going to get up—I'm going to promise to get along with this attorney and not have them withdraw anymore.' And—and it seems like the conflict has always been you asking them to withdraw."

After a brief recess, Judge Tran denied mother's request for court-appointed counsel:

"[W]hile I—I recognize the importance of this hearing based on the case that I've cited to counsel as well as you,

> which is [*Dept. of Human Services v. T. L.*] , 358 Or 679[, 688, 369 P3d 1159 (2016)]. It's a 2016 case. That case held that the parents have a right to counsel—even able counsel, not just any counsel, able counsel—through the hearing. But—so, implicitly, that case says you have a right to counsel; but that doesn't mean it's indefinite.
>
> "And based on the record before me and the advisement by Judge Karabeika and Judge Gilmartin, I'm not going to reverse their decisions and say that you are afforded another attorney. So the request for another court-appointed counsel is denied."

After hearing evidence, Judge Tran denied mother's motion to dismiss and entered an order establishing guardianship of mother's child. Mother appeals. As explained below, we conclude that the juvenile court abused its discretion in denying mother's request for a fourth court-appointed attorney after determining that mother was entitled to counsel for the trial. The court improperly based its decision on the court's prior findings that mother's conduct had impliedly waived her right to counsel in future proceedings because the record is insufficient to support those findings and ODHS explicitly stated it was not arguing on appeal that mother had impliedly waived her right to counsel.

## ANALYSIS

The right to counsel in juvenile dependency proceedings derives from the federal Due Process Clause of the Fourteenth Amendment. *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 188 n 13, 796 P2d 1193 (1990). ORS 419B.205 governs when an indigent parent is entitled to counsel in all dependency proceedings other than termination of parental rights. Under that statute, a juvenile court is required to appoint counsel "whenever the nature of the proceedings and due process so require." ORS 419B.205(1). Thus, "a juvenile court retains authority to deny a parent's request for counsel in * * * dependency proceedings—including permanency proceedings—if the nature of the proceeding and due process do not require representation." *T. L.*, 358 Or at 688.

In determining whether the nature of a particular proceeding and due process require appointment of counsel, a juvenile court "shall" consider the following factors:

"(a)  The duration and degree of invasiveness of the interference with the parent-child relationship that possibly could result from the proceeding;

"(b)  The complexity of the issues and evidence;

"(c)  The nature of allegations and evidence contested by the parent or legal guardian; and

"(d)  The effect the facts found or the disposition in the proceeding may have on later proceedings or events, including but not limited to termination of parental rights or criminal proceedings."

ORS 419B.205(1)(a) - (d).

Due process, in turn, requires that "juvenile dependency situations that implicate parental rights" be "fundamentally fair." Dept. of Human Services v. S. C. P., 262 Or App 373, 382, 324 P3d 633 (2014). Such situations are "fundamentally fair" if the parent(s) are given "the opportunity to be heard at a meaningful time and in a meaningful manner." Geist, 310 Or at 189-90. Thus, the "fundamental fairness" standard "emphasizes factfinding procedures," and the "requirements of notice, adequate counsel, confrontation, cross-examination, and standards of proof flow from this emphasis." Id. at 190.

A parent who is entitled to appointed counsel as a matter of right under ORS 419B.205(1) can waive that right, and we apply the Sixth Amendment standard for determining waiver validity to Oregon juvenile proceedings. *Dept. of Human Services v. J. S.*, 339 Or App 695, 704, 568 P3d 995, *rev den*, 374 Or 379 (2025); *see State v. Meyrick*, 313 Or 125, 137, 831 P2d 666 (1992) ("A waiver of the Sixth Amendment right to counsel must be voluntary, knowing, and intelligent, as must any waiver of constitutional rights."). "The 'voluntary' component [of the waiver standard] refers to an intentional act that is not induced through coercion[,]" while "[t]he 'knowing[]' component refers to a defendant's knowledge and understanding of the right to counsel." *State v. Easter*, 241 Or App 574, 583, 249 P3d 991 (2011). "[W]aiver of the right to counsel can be implied through a defendant's conduct 'so long as the conduct adequately conveys the defendant's knowing and intentional choice to proceed

in court without counsel.'" *State v. Guerrero*, 277 Or App 837, 845-46, 373 P3d 1127 (2016) (quoting *State v. Langley*, 351 Or 652, 669, 273 P3d 901 (2012)). For an implied waiver of counsel to be valid, a defendant must have "(1) received advance warning that continuation of [their] behavior would result in being forced to proceed *pro se* and (2) been given a reasonable opportunity to explain [themselves] such that the court is able to consider all sides of the dispute concerning the defendant's legal representation." *Id.* at 846. Furthermore, "for the advance warning requirement to be meaningful, a defendant must understand the risks and disadvantages of self-representation *before* [they] engage[ ] in the additional misconduct that forms the predicate for a finding of implied waiver." *Id.* (emphasis in original). Such understanding is established if either "(1) the trial court engages in colloquy on the record with the defendant about the risks associated with self-representation or (2) under the totality of the circumstances, we can determine that the record reflects that the defendant knew of [their] right to counsel and understood the risks of self-representation." *Id.* at 847.

On appeal, mother contends that the juvenile court was required to conduct an analysis of the factors under ORS 419B.205(1) as to whether the nature of the trial before it required appointment of counsel, and that it failed to do so. Relatedly, mother contends that the court could not defer to Judge Karabeika's or Judge Gilmartin's prior decisions limiting and denying counsel, respectively, in lieu of that analysis because, according to mother, neither judge engaged in the proper analysis. Mother further argues that the nature of the trial and due process entitled mother to appointment of counsel for the trial. Finally, to any extent that ODHS is suggesting that mother impliedly waived her right to counsel due to her conduct, mother argues that any finding of waiver was invalid because mother's "disagreeing with her attorneys about strategy, purporting to fire her attorneys (which she had no authority to do), and seeking substitute counsel (requests the court should not have allowed in the first instance) did not constitute 'misconduct.'"

ODHS, in contrast, argues that ORS 419B.205 does not entitle a parent in a dependency proceeding to unlimited court-appointed attorneys, and in light of this, Judge Tran did not abuse his discretion in ruling that mother was not entitled to counsel because he was allowed to consider mother's conduct and the court's prior rulings in determining the "nature of the proceeding." Despite this focus on mother's conduct, ODHS expressly stated at oral argument that it is not arguing that Judge Karabeika's and Judge Gilmartin's orders reflected a finding that mother had impliedly waived her right to counsel through misconduct.

At the outset, ODHS also contends that mother failed to preserve her claims of error, arguing that she needed to specifically object below that the juvenile court did not properly apply the factors in ORS 419B.205(1) to raise that argument on appeal. While mother acknowledges that she did not articulate this particular argument below, she argues that she nevertheless preserved her claims of error because she repeatedly asserted that she wanted a court-appointed attorney via her motion requesting appointed counsel and at the hearing before Judge Gilmartin and the trial before Judge Tran.

We agree with mother that her claims are preserved. "We have never held that a valid objection requires the use of magic words. Rather, an objection is made whenever a party communicates to a trial court that [they] disagree[] with the court's actual or potential ruling." *State v. Montwheeler*, 277 Or App 426, 433, 371 P3d 1232 (2016). Furthermore, "the descending hierarchy of importance in evaluating whether an issue is preserved is first and most important, identifying the issue; second, and less important, identifying the source of law; and third, and least important, the particular argument." *State v. Kamph*, 297 Or App 687, 694, 442 P3d 1129 (2019). Since mother raised the issue of her lack of counsel at trial, and since the record shows that Judge Tran was aware of the requirements of ORS 419B.205(1) and subsequently ruled on the issue of appointed counsel, the purposes of preservation were served in this case. *See id.* (concluding that "the practical purposes for preservation were served" where the defendant identified the issue

and cited the applicable federal constitutional basis, but did not explicitly identify the Fourth Amendment, because the court was aware of the issue and ruled on it).[3]

We now turn to the merits of mother's claims. We review a juvenile court's determination under ORS 419B.205(1) for abuse of discretion. *See T. L.*, 358 Or at 688 ("[A] juvenile court retains authority to deny a parent's request for counsel in *** dependency proceedings *** if the nature of the proceeding and due process do not require representation.").

As discussed above, in determining whether an indigent parent is entitled to counsel in a particular non-termination dependency proceeding, the juvenile court must consider the four factors outlined in ORS 419B.205(1). While there is nothing in the statute suggesting that these factors are exclusive in determining the nature of, and due process requirements for, a particular proceeding, a juvenile court must at minimum consider those factors. Furthermore, a court can only deny appointment of counsel to an indigent parent who is entitled to counsel if the parent waives their right to counsel, either explicitly or implicitly. *See Dept. of Human Services v. R. R. R.*, 340 Or App 658, 660, 571 P3d 1169 (2025) (accepting ODHS's concession that the court erred in proceeding with a jurisdictional trial without appointing counsel for the father because the court had determined the father was entitled to counsel and the father had "never waived his right to counsel").

Our assessment of Judge Tran's decision to deny mother counsel begins with the hearings before Judge

---

[3] ODHS also argues that mother invited any error because mother said "yes" after Judge Karabeika asked her if she understood the court's ruling. Simply stating that she understood the ruling, which she did not ask the court to make, is insufficient to establish that she agreed to be bound by that ruling. *Cf. Ingram v. Allen*, 273 Or 890, 892-93, 544 P2d 167 (1975) (concluding that plaintiff had invited error by "acquiescence" by agreeing in advance of jury deliberations that the jury would not be advised of the ultimate result of their special findings, and by later stating that plaintiff did not have a "particular preference" for a formal jury verdict form versus a special finding form). We also reject ODHS's argument that mother's claim of error is barred by the law of the case doctrine. The Supreme Court has concluded that "[t]he term 'law of the case' is best reserved for use in the context in which a party seeks to relitigate an *appellate decision*," concluding that the "[u]se of the term to address other issues may confuse rather than clarify." *Kennedy v. Wheeler*, 356 Or 518, 531, 341 P3d 728 (2014) (emphasis added). Mother does not seek to relitigate any decisions made in her prior appeal.

Karabeika and Judge Gilmartin because Judge Tran deferred to those judges' orders limiting and denying mother counsel. The transcripts of those hearings reflect that Judge Karabeika concluded that mother was entitled to counsel under ORS 419B.205(1) but would not be entitled to any future appointed attorneys based on mother's conduct. At the time of the hearing before Judge Karabeika, mother was represented by court-appointed counsel but requested withdrawal of that counsel and appointment of her third. Judge Karabeika, apparently concluding that mother continued to be entitled to court-appointed counsel, granted those requests.[4] However, the court also ruled that mother would not receive any more court-appointed attorneys if her third attorney withdrew, regardless of whether mother would be entitled to one under ORS 419B.205. The only possible basis for that prospective ruling, as well as Judge Gilmartin's subsequent ruling denying mother a fourth attorney, is a finding that mother had impliedly waived her right to counsel through her conduct of repeatedly requesting withdrawal of her court-appointed attorneys and appointment of new ones.

At the trial at issue in this appeal, the record shows that Judge Tran explicitly considered Judge Karabeika's and Judge Gilmartin's prior rulings in deciding whether to appoint counsel for mother. Judge Tran appeared to conclude that mother was entitled to appointed counsel for the trial after considering the requirements of ORS 419B.205(1) and the holding in *T. L.*, observing that "implicitly, [*T. L.*] says [mother has] a right to counsel[.]"[5] Despite this determination, the court nevertheless denied appointment of a fourth attorney, concluding that the right to counsel is not "indefinite" and that, "based on the record before [it] and the advisement of Judge Karabeika and Judge Gilmartin, [it was] not going to reverse their decisions and say that

---

[4] We say "apparently" because the record does not show that Judge Karabeika expressly relied on the statute or its factors.

[5] In *T. L.*, the Supreme Court concluded that a permanency proceeding that changes a child's permanency plan from reunification of the child with their parent(s) to guardianship is a "profound change of course" that involves a significant degree of invasiveness into the parent-child relationship and can involve complex legal and factual issues, thus requiring adequate counsel. *T. L.*, 358 Or at 691-92 (analyzing the ORS 419B.205(1) factors in the context of adequacy of counsel).

[mother was] afforded another attorney." Thus, the court's decision to deny mother counsel despite her entitlement was necessarily based on its belief that it was bound to the court's prior implicit findings that mother had impliedly waived her right to future appointed counsel based on her conduct.

The record does not reflect that Judge Tran conducted his own analysis of whether mother had validly waived her right to counsel. *Guerrero*, 277 Or App at 845-47 (explaining, in the criminal context, the legal framework that a court must engage with before concluding that a person entitled to court-appointed counsel waived that right). Indeed, ODHS expressly stated at oral argument that it was not defending Judge Tran's ruling on the basis that mother had implicitly waived her right to counsel through her conduct because, in ODHS's view, "the court *** did not say anything about waiver of counsel." Instead, ODHS argues only that Judge Tran was correct in ruling that mother was not entitled to counsel for the trial under ORS 419B.205(1), and that Judge Tran properly considered mother's conduct and the court's prior rulings denying mother counsel when determining the "nature of the proceedings."

We appreciate that Judge Tran did not expressly "say anything about waiver" of counsel. We also appreciate that the previous orders put Judge Tran in a somewhat difficult position of trying to adhere to his colleagues' previous orders, which themselves were not explicit about whether those orders were based on a finding of implicit waiver. Thus, both we and Judge Tran (as well as mother and ODHS) are left reading between the lines of those previous orders. Ultimately, however, we read the record differently than ODHS. Judge Tran explained that he was basing his decision to deny mother counsel on his reading of Judge Karabeika's and Judge Gilmartin's orders, which concluded that mother prospectively would not be entitled to more attorneys. As explained above, the only basis for such a ruling is that mother's conduct amounted to an implicit waiver of counsel.

However, our review of the record before us, coupled with ODHS's explicit disclaimer of reliance on an implied waiver argument, leads us to conclude that the record

is insufficient to establish that mother implicitly waived her right to counsel based on her conduct under the Sixth Amendment standard. Therefore, we conclude that the juvenile court erred in denying mother appointed counsel. As noted above, a juvenile court has discretion to deny an indigent parent's request for counsel in non-termination dependency proceedings "*if* the nature of the proceeding and due process do not require representation." *T. L.*, 358 Or at 688 (emphasis added). If a court determines that representation is required, counsel "shall be appointed," ORS 419B.205(1), unless the parent makes a valid express or implied waiver of counsel. Here, mother did not expressly waive her right to counsel, and the record is insufficient to support a finding that mother implicitly waived counsel. Accordingly, the juvenile court abused its discretion in denying mother counsel once it had determined that the nature and due process requirements of the proceeding before it necessitated appointment. We therefore reverse the judgment denying mother's motion to dismiss and establishing a guardianship over her child, and remand to the juvenile court to appoint counsel for mother for a new trial.

Reversed and remanded.